Arden L. BORGEN and Cassaday—Borgen Technologies, Ltd., Appellees,

v.

Virginia KLEMM and John Klemm, Appellants.

No. 85–1437.

Supreme Court of Iowa.

July 23, 1986.

Rehearing Denied Aug. 20, 1986.

Paul R. Huscher, Des Moines, for appellants.

Larry Seckington and Mark R. Schuling, of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellees.

Considered by McGIVERIN, P.J., SCHULTZ, CARTER, WOLLE, and LAVORATO, JJ.

CARTER, Justice.

Defendants, Virginia Klemm and John Klemm, who are the parties or beneficiaries under a written agreement wherein Virginia Klemm sold all the stock of a closely held corporation to plaintiff, Arden L. Borgen, appeal from a declaratory judgment requiring indemnification of the buyers and the corporation for certain federal income tax liabilities of the corporation antedating the sale. Upon our review of the record, we affirm the judgment of the district court.

Under a written agreement dated November 20, 1981, defendant, Virginia Klemm, sold all the stock of H.V. Cassaday Refrigeration, Inc., a closely held Iowa corporation, to plaintiff, Arden L. Borgen. Defendant John Klemm is Virginia Klemm's husband. Although he was not a signatory to the written agreement of sale, he was a beneficiary thereof with respect to certain provisions involving his continued employment by the corporation.

The November 20, 1981 agreement contained the following provisions:

Seller owns all of the outstanding shares and desires to sell ... the outstanding shares to buyer, and buyer desires to acquire ... the outstanding shares upon the terms and conditions as stated in this agreement.

It is agreed:

1. Agreements to Buy and Sell Shares.

Seller agrees to sell to buyer on the "closing date" 2,100 of the outstanding shares in the corporation ("Shares"), and buyer agrees to buy the shares from seller on the closing date.

2. Purchase Price; Payment.

The total purchase price for the shares which buyer agrees to pay to seller is $60,000, $10,000 payable by cashier's or certified check at closing, and the balance of $50,000 plus interest at 10% per year payable by cashier's or certified check on January 5, 1982.

. . . .

4. Special Agreements of the Shareholder.

. . . .

c. Seller will indemnify and save the buyer harmless against any claim (including reasonable attorneys' fees) suffered by him from any breach of any warranty or covenant or agreement of seller contained in this agreement or from any liability or obligation in respect of the shares. *The seller will also indemnify and save the buyer and the corporation harmless against* all sales taxes, personal property taxes, withholding taxes, and business license fees levied in connection with operations of the corporation for periods prior to the closing date *and against payments or deficiencies in federal, state, and local taxes for the corporation's taxable years prior to 1981 and resulting from operations of the corporation during 1981 and prior to the closing date.* The buyer will refrain and will cause the corporation to refrain from payment of any claim made in connection with the obligations to which these agreements to indemnify pertain, notify the seller of the existence of the claim, and give the seller the opportunity to defend, compromise, or pay the claim. No claim for indemnification, except as to tax matters, shall be made by the buyer or the corporation more than three years after the closing date. No claim for indemnification as to tax matters shall be made by the buyer or the corporation later than the date upon which any statute of limitations becomes applicable to the ability of the appropriate tax au-

thority to enforce the payment or deficiency. No claim for indemnification may be made under this paragraph until the aggregate of all such claims of the buyer and the corporation shall exceed $10,000, and the seller shall not be obligated to pay the first $10,000 of all such claims.

. . . .

8. The Closing Date and Closing.

a. The closing date under this agreement shall be 2 PM on November 20, 1981. If any condition of this agreement has not be fulfilled by the closing date, the date may be postponed at the option of the party entitled to the fulfillment of the condition, for a period of 30 days.

(Emphasis added.)

Subsequent to the execution of this stock purchase agreement, certain problems arose between the parties concerning their respective rights and obligations thereunder. Except as recited in the agreements which are set forth later in this opinion, the nature of these disputes cannot be ascertained with particularity from the record. It does appear, however, that none of these disputes involved the seller's duty to indemnify the buyer and the corporation for federal income tax liabilities of the corporation. In settlement of the disputes which did exist, the parties on November 3, 1983, executed another written agreement denominated "settlement agreement."

The latter agreement provided, in part:

1. That Borgen is claiming in various lawsuits now filed in the Polk County District Court a credit from the purchase agreements entered into by and between Parties of the First Part and Parties of the Second Part, the total sum of One Hundred Seventeen Thousand Dollars ($117,000), plus interest, attorneys fees and court costs.

2. That Klemms are claiming as against Parties of the First Part the payment of one certain Promissory Note, Stock Purchase Agreement and Non-Competition Agreement, payments due December 31, 1982, and salary through September, 1983 in the total sum of One Hundred Forty-Seven Thousand Eight Hundred Dollars ($147,800), together with interest, court costs and attorney fees.

3. That in addition, Virginia Klemm is claiming as part of her employment compensation the transfer and use of one certain automobile.

4. That as a compromise and settlement of any and all claims arising prior to the date of this agreement, the Parties do hereby agree that as full and complete settlement of any and all claims, allegations, causes of action, whether or not known and whether contingent or liquidated, that the following settlement steps will be accomplished on the dates set forth hereinafter;

A. *That Cassaday—Borgen Technologies, Ltd. will pay the tax due by Virginia Klemm on behalf of Cassaday Refrigeration Co., Inc. as a result of the 1979–1980 federal tax audit in the sum of approximately Fifteen Thousand Dollars ($15,000.00).*

B. That there will be an additional Forty-Four Thousand Dollar ($44,000.00) payment to Virginia Klemm as spelled out hereinafter.

. . . .

D. That there is still a matter of a federal income tax adjustment for the Company for the year 1981 (through November 20, 1981) and state tax adjustments for the Company for the years 1979, 1980 and 1981 (through November 20, 1981), which are unknown at this time. The Parties agree in connection with the payment of any taxes as a result thereof, other than those referred to in Paragraph A. above, that the computation by the taxing authorities as to the amount of taxes, penalties and interest due and owing shall be paid by Parties of the Second Part in a timely manner that will protect Cassaday—Borgen Technologies, Ltd. from collection procedures of the taxing authority. Parties of the First Part will refrain from the payment of any claim made in connection with the obligations to which this Paragragh D.

applies, will notify Party of the Second Part of the existence of the claim, and give the Party of the Second Part the opportunity to defend, compromise, or pay the claim.

E. *That should Party of the Second Part fail to pay the taxes, penalty and interest in a timely manner so as to protect the Company from collection procedures of the taxing authority, and the Company pays the same, then the Company shall deduct the amount of taxes, penalty and interest so paid from any payment then due or to become due to Party of the Second Part.*

(Emphasis added.)

This settlement agreement was signed by the corporation and plaintiff, Arden L. Borgen, as its president. It was also signed by both of the defendants. At the time the November 3, 1983 settlement agreement was executed, the plaintiffs and defendants were aware that, in an audit of the corporation's 1979 and 1980 federal income tax returns by the Internal Revenue Service, a deficiency in tax owed of $3876.64 had been established for 1979 and a deficiency of $10,988.26 had been established for 1980. The source of this information was a report of proposed adjustments issued by the internal revenue service on May 11, 1983, and received by the corporation. It is agreed that the parties at this time had not been made aware of the potential interest and penalty to be assessed as a result of that deficiency.

The present dispute arose after the assessment of interest and penalty on the $14,864.90 federal tax arrearages for 1979 and 1980 increased the corporation's liability for these taxable years to $23,289.11. The corporation paid the latter sum, and plaintiffs then brought the present declaratory judgment action. They seek a declaration that the buyer may deduct from amounts owed to the seller on the sale of stock the difference between $23,289.11 and $14,864.90. The district court granted the declaratory judgment in substantially the same manner as requested by the plaintiffs.

In addition to offering the contract documents and the IRS notice of proposed adjustments as evidence at the trial, each side presented the stipulated testimony of three witnesses. The substance of this stipulated testimony is conflicting with respect to the interpretation of the November 3, 1983 agreement.

Plaintiff, Arden L. Borgen, testified that the 1983 agreement was intended to supersede the 1981 agreement with respect to the obligations imposed on the parties. He testified that, although the federal income tax liabilities at issue fall by law upon the corporation, the buyers and sellers negotiated the payment of such liabilities as among themselves in entering into the 1983 settlement agreement. These negotiations culminated, according to Borgen's testimony, in an agreement evidenced by Paragraph 4 of the settlement agreement limiting the obligation of the buyers and the corporation to no more than $15,000 in total for 1979 and 1980 federal income tax liabilities. Any additional amounts owed could, under Borgen's interpretation of the agreement, be deducted from the purchase price owed to the sellers by the buyers.

Ron Briese, a certified public accountant, testified that he had participated in the drafting of the settlement agreement on behalf of the buyers, and his interpretation of the intent of the language employed was the same as Arden L. Borgen's. David Nelson, who is identified in the stipulated testimony of plaintiffs only as a "financial advisor," stated that he too participated in the negotiations of the November 3, 1983 agreement and its intention was as testified to by Borgen and Briese.

For the plaintiffs, Virginia Klemm testified that the November 3, 1983 agreement was intended to supersede the November 20, 1981 contract. She stated that, at the time the latter agreement was executed, the parties were aware of proposed federal income tax deficiencies of the corporation of $3876.64 for 1979 and $10,988.26 for 1980. She testified, however, that no assessment of interest or penalty was anticipated by the parties in negotiating the set-

tlement agreement. She indicated that in negotiations the plaintiffs agreed to assume all obligation for 1979 and 1980 federal income tax liabilities of the corporation in exchange for her agreement to indemnify the corporation against potential state income tax liabilities for the years 1979, 1980 and 1981 and any potential federal income tax liability for the year 1981. She testified that at no time had the defendants agreed to indemnify the corporation or Arden L. Borgen for penalty or interest on any federal income tax deficiencies for 1979 or 1980.

Dennis Shull, a certified public accountant, testified that he participated on behalf of the defendants in the negotiation of the November 3, 1983 agreement and that it was his understanding that the agreement operated to remove any and all liability of the defendants to indemnify the corporation for 1979 or 1980 federal income tax liabilities. Defendant, John Klemm, testified that the testimony of his wife, Virginia, and Dennis Shull correctly set forth the agreement which had been negotiated with the plaintiffs.

The defendants' argument on appeal is a straightforward and simple one. The basic premise of this argument is that the burden of the federal income taxes, interest, and penalties assessed for the years 1979 and 1980 fall by law on the corporation. Accordingly, defendants urge that the sellers of the stock of the corporation have no obligation for the payment of these taxes or any interest or penalties thereon except as may have been assumed by contract. They argue that, even if the November 20, 1981 contract placed some burden of indemnification on the sellers for the corporation's tax deficiencies at issue here, that obligation was released in the November 3, 1983 settlement agreement. In support of the latter conclusion, they point to the language contained in Paragraph 4 of the settlement agreement which recites that it is "a compromise and settlement of any all claims arising prior to the date of this agreement ... and [in] complete settlement of any and all claims, allegations, causes of action, whether or not known and whether

contingent or liquidated." In addition, they urge that the demise of the covenants under the earlier contract are to be found in the language of Subparagraph J of Paragraph 4 which indicates that

J. By the signing and execution of this agreement, it is understood and stipulated by and between the parties that all disputes, allegations, causes of actions and claims, whether known or unknown and whether contingent or liquidated, by and between the parties, which may have occurred prior to the date of this settlement, are hereby settled, compromised and released and shall not be the basis for any cause of action hereinafter by either party hereto.

As further amplification on the argument thus made, defendants note that the matter of federal income tax liabilities for which they have agreed to indemnify the plaintiffs is dealt with in Subparagraph D of Paragraph 4 of the settlement agreement, a clause which makes no mention of federal income tax liabilities for the years 1979 and 1980. They note that the subject of 1979 and 1980 federal income tax liabilities is contained in Subparagraph A of Paragraph 4, which they interpret as placing the obligation for payment of those liabilities entirely upon the corporation.

However plausible defendants' arguments may be, they are entitled to prevail only if those arguments carry the day as a matter of law. In several cases, we have applied the standard of interpretation contained in Restatement (Second) of Contracts § 212(2) (1979) which provides:

A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Otherwise a question of interpretation of an integrated agreement is to be determined as a question of law.

*See First National Bank of Creston v. Creston Implement Co.,* 340 N.W.2d 777, 782 (Iowa 1983); *Farm Bureau Mutual*

*Insurance Co. v. Sandbulte,* 302 N.W.2d 104, 107–08 (Iowa 1981); *Connie's Construction Co. v. Fireman's Fund Insurance Co.,* 227 N.W.2d 207, 210 (Iowa 1975). For purposes of applying the foregoing rule in the present case, we will assume, because the primary witnesses for each side have so testified, that the settlement agreement is an integrated agreement intended to completely supersede the contract of November 20, 1981. In determining the meaning to be ascribed to the settlement agreement, however, we apply the rule that

> "[a]ny determination of meaning ... should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties."

*First National Bank of Creston,* 340 N.W.2d at 781 (quoting Restatement (Second) of Contracts § 212 comment b (1979)). *Accord First National Bank in Creston v. Smith,* 331 N.W.2d 120, 122 (Iowa 1983); *Bare v. Cole,* 220 Iowa 338, 342–43, 260 N.W. 338, 340 (1935).

In the application of this standard, we believe that different inferences may reasonably be drawn regarding the intention of the parties concerning the disputed federal income tax liabilities of the corporation. The very presence of the language employed in Paragraph 4A lends credence to the interpretation which plaintiffs propose and the trial court adopted. The language which is employed in that clause clearly connotes an intention by the contracting parties to make some special arrangement between themselves concerning ultimate responsibility for payment of the 1979 and 1980 federal tax liabilities. Under defendant's theory—that the intent of the parties was simply to remain in the position in which the federal revenue laws placed them—this clause would not have been necessary. Also supporting the trial court's ultimate findings and conclusions on the issue of the intention of the parties is the language of Paragraph 4A recognizing the existence of taxes due "by Virginia Klemm" as a result of the 1979 and 1980 federal tax audit and expressly limiting plaintiffs' responsibility for such liabilities to a stated sum.

Although the November 20, 1981 agreement was superseded by the 1983 agreement, its provisions cast additional light on the intention of the parties in negotiating the settlement of unknown tax liabilities. Under that agreement, we believe plaintiffs' interpretation would clearly prevail with respect to all unknown tax liabilities stated therein, including interest and penalties. Defendants have not suggested any reason why the 1979 and 1980 federal income tax liabilities were to be treated differently from the other unknown tax liabilities listed in Paragraph 4D of the 1983 agreement. Under this clause, the sellers were to indemnify the buyers and the corporation as to all unknown tax liabilities listed therein including interest and penalties. The trial court could easily have found that the 1979 and 1980 federal tax liabilities were dealt with in a separate paragraph of the agreement because, unlike the other unknown tax liabilities, the buyers were to assume the first $15,000 of these obligations.

On our review of the entire record, we conclude that the issue presented was one of fact to be resolved by the trial court. The findings of that court concerning the ultimate intention of the parties are supported by substantial evidence. Accordingly, the trial court's ultimate finding may not properly be disturbed on appeal. *See, e.g., Hamilton v. Wosepka,* 261 Iowa 299, 314, 154 N.W.2d 164, 172 (1967).

AFFIRMED.