Lillian R. YOUNG, Appellant,

v.

CEDAR COUNTY WORK ACTIVITY
CENTER, INC., An Iowa
Corporation, Appellee.

No. 86–727.

Supreme Court of Iowa.

Nov. 25, 1987.

John W. Hayek and James C. Larew of Hayek, Hayek, Hayek & Holland, Iowa City, for appellant.

Stuart Werling of Werling Law Office, Tipton, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and NEUMAN, JJ.

CARTER, Justice.

Plaintiff, Lillian R. (Lee) Young, appeals from an adverse judgment in an action against her former employer, Cedar County Work Activity Center, Inc. (CCWAC), for wrongful discharge in violation of the terms of her employment contract and for alleged violations of 42 U.S.C. section 1983. For reasons which we hereafter discuss, we affirm the judgment of the district court.

CCWAC is a nonprofit corporation whose activities involve training mentally handicapped adults in the skills necessary to sustain independent living. Its services are available to any handicapped person who can afford same, but during the period in question, it had no paying clients. It was funded entirely from appropriations from the Cedar County Board of Supervisors.

Plaintiff was hired by CCWAC in 1979 as an aide. She was subsequently twice promoted, first to the position of supervisor, then to program manager. At the time of her discharge on October 30, 1984, she was working under a written contract with CCWAC which provided as follows:

### CONTRACT

This contract, made and entered into this 1st day of July 1984, by and between the Cedar County Work Activity Center and Lee Young.

The Work Activity Center employs Lee Young as a Program Manager for the year. However, either the employer or the employee can terminate this agreement with a 30 day notice.

The Work Activity Center agrees to pay the employee $10,365.00 a year based on monthly pay for 12 months.

The employee receives *14* (amount of) sick days, *2* (amount of) personal days.

Although the contract does not refer to an employee handbook, such a publication was given to plaintiff by CCWAC contemporaneously with the written contract. The handbook contained both an employee grievance procedure and a five-step disciplinary procedure, the last step of which was termination of employment. The procedure outlined in the manual reads as follows:

The following steps shall normally be taken by the Executive Director in the event of any employee not following policies and procedures of the Cedar County Work Activity Center. However serious offenses [may] not warrant immediate use of steps 3, 4, or 5.

1. First (1) offense—state this is a verbal warning.

2. Second (2) offense—verbal warning noted in personnel file.

3. Third (3) offense—written warning indicating that suspension will result next time and that the written warning will go into their personal file.

4. Suspension for a minimum of one (1) day *without* pay.

5. Termination

6. Before the above termination can occur the following procedures will be followed:

1. Supervisor recommends termination

2. Executive Director takes recommendation to Board of Directors.

3. Before final decision by Board of Directors EEO/AA Officer Kathy Lewis will be given opportunity to see and review all recommendations.

4. Board of Directors will have final authority to terminate employee.

During 1984, conflict between CCWAC staff members attracted the attention of members of the public as well as the county board of supervisors. At least some of the disagreements among staff involved a proposed move of CCWAC's facilities. Plaintiff's husband, who was the local chief of police, made public statements in opposition to a relocation of the facilities. In September 1984, the Cedar County Board of Supervisors requested Kathy Lewis, executive director of CCWAC, to attend its regular board meeting. She was advised that "street gossip" indicated that there was a problem with CCWAC's staff. The supervisors suggested to Kathy Lewis that, if this problem was not handled, further funding by the county would be problematic.

On September 25, 1984, Kathy Lewis gave plaintiff a written disciplinary warning for an alleged violation of rules governing employer-employee complaints. That memo read, in part, as follows:

This is the third step in a disciplinary procedure, a written warning that you have not been following and enforcing rules and regulations of the Center. You have not followed the grievance procedure by taking your grievances to other staff personnel, the Center's board and community people before first going through the director.

In February of this year I gave you a verbal warning on this same charge.

Upon receipt of this memo, plaintiff sought to have the written warning removed from her personnel file. She also disputed the statement in the memo that the first two

steps of the disciplinary procedure had been carried out by the employer.

Plaintiff attended a meeting of the governing board of CCWAC on October 23, 1984, in order to voice her contentions concerning the placing of the September 25, 1984, memo in her employment file. Both plaintiff and Kathy Lewis addressed the governing board on this issue at the meeting. Plaintiff complained that her job description had been substantially changed by the director without any prior discussion or opportunity for input by plaintiff. Kathy Lewis responded by informing the board that she had discussed these job description changes with plaintiff and that plaintiff had taken her complaints to other staff personnel and to persons outside the CCWAC organization.

Kathy Lewis also told the board at the October 23 meeting that friction between plaintiff and other employees had, on occasion, led to screaming matches. Reference was made to a prior meeting of the board at which it had been resolved that plaintiff must improve her interpersonal relationships with fellow employees. Kathy Lewis stood by her position that plaintiff's situation properly stood at the third level of the disciplinary procedure outlined in the employee manual. No action was taken by the board at that meeting concerning plaintiff's employment situation. The board chairman stated at this time:

> I've asked how each one of you [plaintiff and Kathy Lewis] could solve it. I'm going to be honest with you. It doesn't sound very good. I think we have a personality conflict. I am truthfully very disappointed. I think the board should have a meeting and I know I am afraid the outcome is going to be serious.

On October 30, 1984, the board held another meeting at which plaintiff's employment status was considered. Plaintiff, who claims that she was unaware that this matter was on the board's agenda, did not attend. At the conclusion of that meeting, the board voted to discharge plaintiff. She was informed by letter of this action, ostensibly effective upon receipt of that communication.

In her section 1983 claim, plaintiff contends that CCWAC was acting "under color of state law" in implementing its decision to discharge her. Consequently, she contends, the procedures utilized in discharging her were inadequate based on fourteenth amendment due process considerations. In addition, plaintiff claims that her discharge was a violation of her contract of employment because the employee's handbook should be considered as a part of the integrated agreement.

The district court, after hearing evidence of the foregoing facts, determined that the action of the governing board of CCWAC was not "state action" so as to give rise to a claim under 42 U.S.C. section 1983. In addition, the court found and concluded that the discharge procedures contained in the employee's handbook had not been incorporated in the integrated employment agreement so as to require plaintiff's discharge to be carried out in accordance with the handbook procedures. The court determined that under the contract the governing board could terminate plaintiff's employment without cause on thirty-days written notice to her. Based on that conclusion, the court limited plaintiff's recovery against CCWAC to thirty days compensation in accordance with our decision in *McClure v. International Livestock Imp. Services Corp.*, 369 N.W.2d 801 (Iowa 1985). On appeal, plaintiff challenges the district court's decision on both aspects of her case. We consider these issues separately.

I. *Plaintiff's Claim Under 42 U.S.C. § 1983.*

Plaintiff's claim under 42 U.S.C. section 1983 is posited on the premise that the actions of the governing board of CCWAC were carried out under color of state law. The basis for this contention is that (a) public funds were used to fund the organization's activities, and (b) the organization's activities were of a type traditionally performed by governmental bodies.

Purely private acts do not fall within section 1983. Whether an act is "private" or "state action" becomes confused where

an agency of government becomes significantly involved in private activities. In this situation, the totality of the circumstances must be scrutinized in order to determine whether ostensibly private acts are in fact carried out "under color of state law." The principal test of what is "state action" where there has been a substantial governmental involvement in private organization activity is found in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (private utility extensively regulated cut off customer service for unpaid bills). In *Jackson*, the court stated that "a sufficiently close nexus between the state and the challenged action" was required so that the private action "may be fairly treated as that of the state itself." *Id.* at 351, 95 S.Ct. at 453, 42 L.Ed.2d at 484.

■ More recently, the Supreme Court has dealt with the various individual factors of governmental involvement that are substantial enough to satisfy the "state action" requirement in *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The Court held in that case that a private school did not act under color of state law when it discharged teachers in apparent violation of due process, even though the school received extensive public funding and was subject to considerable state regulation. In reaching that conclusion, the Court examined (1) the extent of public funding, (2) the extent of public regulation, (3) whether a performance of traditionally public functions was involved, and (4) whether a significant symbiotic nexus existed between the state and the private organization. The Court concluded based on the totality of these factors that the school's relationship with the state was not unlike that of many private contractors performing services for the government.

■ Applying the *Rendell–Baker* criteria to the present situation, we conclude that the acts of the Cedar County Board of Supervisors in funding the activities of CCWAC was only an alternative means of providing services that might have been obtained by contracting with the private sector. The record fails to indicate that the decision to discharge the plaintiff was compelled or even influenced by any recognized state policy. In order for a public entity to be liable under 42 U.S.C. section 1983, there must be some basis for concluding that the challenged action stems from a policy-making function assumed by the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Klooster v. North Iowa State Bank*, 404 N.W.2d 564 (Iowa 1987). The district court was correct in denying plaintiff's claims based on 42 U.S.C. section 1983.

## II. *Plaintiff's Breach of Contract Claims.*

■ We next consider plaintiff's contention that the district court erred in concluding the disciplinary procedures outlined in the employee handbook did not constitute a part of her employment contract. The district court found and concluded that the written contract dated July 1, 1984, and signed by the parties was the complete expression of the employment arrangement. This agreement was interpreted by the court as giving either party a right of termination for any reason on thirty-days notice to the other party. Accordingly, the court relying on *McClure v. International Livestock Imp. Services Corp.*, 369 N.W.2d at 805, limited plaintiff's recovery to the amount of compensation payable under the agreement for a period of thirty days.

The fighting issue in the case is whether the July 1, 1984, written contract constitutes an integrated employment agreement or, whether the provisions in the employee manual were also part of the employment contract. Plaintiff correctly notes that the precise intentions of parties to an employment agreement are often left unexpressed and that contractual obligations may be enforced based upon the reasonable expectations of the parties. As we noted in *Wolfe v. Graether*, 389 N.W.2d 643 (Iowa 1986):

> [O]ne of the parties (usually the employee) may have had in mind a definite period of employment and the other par-

ty had not. Here there is no actual "meeting of the minds"; and yet there may be a valid contract. Interpreting the elliptical expressions of the parties, the court may find that the expressions, interpreted in the light of the surrounding facts, made the understanding of one of the parties reasonable and made it unreasonable for the other party not to know that such would be the first party's understanding. In such a case, there is a contract in accordance with that understanding.

*Id.* at 653–54 (quoting 3A A. Corbin, *Contracts* § 684, at 224 (1960)).

Based upon the foregoing principles, we conclude that the trial court might have found on the evidence that the conditions set forth in the employee's manual formed a part of plaintiff's contract of employment. Unfortunately for the plaintiff, the district court found otherwise on the evidence presented. Consequently, in order to prevail, plaintiff must establish that her interpretation should prevail as a matter of law.

In several cases, we have applied the standard of interpretation contained in Restatement (Second) of Contracts § 212(2) (1979), which provides:

A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Otherwise a question of interpretation of an integrated agreement is to be determined as a question of law.

*See Borgen v. Klemm,* 391 N.W.2d 252, 256–57 (Iowa 1986); *First Nat'l Bank of Creston v. Creston Implement Co.,* 340 N.W.2d 777, 782 (Iowa 1983); *Farm Bureau Mut. Ins. Co. v. Sandbulte,* 302 N.W. 2d 104, 107–08 (Iowa 1981); *Connie's Constr. Co. v. Fireman's Fund Ins. Co.,* 227 N.W.2d 207, 210 (Iowa 1975).

■ Ordinarily, whether a particular writing has been adopted as an integrated agreement is "a question of fact to be determined in accordance with all relevant evidence." Restatement (Second) of Contracts § 209 comment c (1981). Under plaintiff's view of the matter, the provision in the employee's manual would be inconsistent with the provisions of the written contract. Because the evidence strongly suggests that the manual was in existence at the time the employment agreement was signed, this tends to support the district court's finding that its provisions were not intended to be contractual. Moreover, the language in the employee's manual purports to describe steps which "shall normally be taken." The district court's ultimate finding was consistent with reasonable inferences to be drawn from the context of the transaction. Consequently, such finding is binding upon us in the determination of this appeal. *Borgen,* 391 N.W.2d at 257. We have considered all issues presented and find no basis for reversing the district court's judgment.

AFFIRMED.