James E. CANNON, Appellee,

v.

**NATIONAL BY–PRODUCTS,
INC., Appellant.**

No. 86–1755.

Supreme Court of Iowa.

April 13, 1988.

Rehearing Denied May 6, 1988.

Bruce E. Johnson of Gamble, Riepe, Webster, Davis & Green, Des Moines, for appellant.

James L. Pillers of Pillers, Pillers & Pillers, P.C., Clinton, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO and ANDREASEN, JJ.

CARTER, Justice.

Defendant, National By–Products, Inc., appeals from a judgment against it in a wrongful discharge action brought by its former employee, plaintiff, James E. Cannon. The action was tried to a jury which found in favor of the plaintiff and awarded him damages of $47,500. On appeal, defendant challenges the sufficiency of the evidence on the question of the alleged breach of contract and, in addition, challenges certain evidentiary rulings of the district court. On our review of the evidence, we conclude that the jury's verdict on the breach of contract issue is supported by the evidence and that no error occurred at trial which requires reversal.

Plaintiff began working for defendant in 1969 at its rendering plant in Clinton, Iowa. By 1980, plaintiff had been promoted to the job of shift foreman. He was discharged on October 21, 1981, ostensibly for the reason that physical limitations following a back injury would not permit him to perform the requirements of his job. The medical evidence offered at trial was conflicting concerning plaintiff's ability to continue to perform his job requirements following orthopedic surgery in December 1980 to correct an injury to his lumbar vertebrae.

Plaintiff alleged that his employment contract included the written personnel policies which had been unilaterally prepared by defendant and placed in force prior to the time of his discharge. Those policies were included in a handbook which was distributed to employees. These written personnel policies provided:

> No employee will be suspended, demoted, or dismissed without just and sufficient cause. Sufficient cause for discharge shall include among other reasons, dishonesty, negligence, incompetence, insubordination, intoxication while on duty, failure to report for work, or refusal to perform any reasonable work, service or labor.

> Should a controversy over discharge, or an employee grievance arise that cannot be settled by the employee and the immediate supervisor, it shall be submitted in writing, or in person, to the plant superintendent or territory supervisor. If no settlement is reached, the employee shall have the right to a hearing with the district manager and the employee's supervisor.

The trial court submitted to the jury the issue of whether these personnel policies had been integrated into plaintiff's contract of employment. Under the court's instructions, if the jury found that these policies were not part of plaintiff's contract, then he was to be deemed an employee at will subject to discharge for any reason or for no reason at all. If, however, the jury found that the personnel policies were part of plaintiff's contract, it was then permitted to find that his discharge was improper if not for cause. The latter determination was narrowly limited by the court's instructions to a determination of whether plaintiff's discharge for medical reasons was pretextuous. Under the instructions, if the jury found that the employer sincerely be-

lieved that plaintiff was physically unable to adequately perform his job requirements, plaintiff was not entitled to recover.

As so instructed, the jury found for the plaintiff. We separately consider defendant's challenges to the evidence offered in support of the verdict and to certain evidentiary rulings by the district court.

I. *Sufficiency of the Evidence to Support the Jury's Finding That Defendant Had Breached Plaintiff's Contract of Employment.*

Defendant challenges the sufficiency of the evidence to support the verdict in at least three material particulars: (1) sufficiency of the evidence to show that the employment contract was other than that of an employee at will, (2) sufficiency of the evidence to establish legal consideration for a modification of plaintiff's original contract of employment, and (3) sufficiency of the evidence to establish legal consideration to support an agreement for permanent employment. We separately consider these issues.

A. *Sufficiency of the evidence to show that the personnel policies were part of plaintiff's employment contract.* Although the evidence is somewhat indefinite as to when defendant's written personnel policies were put in force, it is clear that this occurred subsequent to the time that plaintiff was employed in 1969. Some evidence indicated that the policies were adopted in 1978. Defendant contends that regardless of when these policies were issued they created no contractual obligations on its part.

We discussed the issue of whether personnel policies may become part of an employment contract in *Young v. Cedar County Work Activity Center*, 418 N.W.2d 844, 847–48 (Iowa 1987). We observed as follows with respect to that question:

> Plaintiff correctly notes that the precise intentions of parties to an employment agreement are often left unexpressed and that contractual obligations may be enforced based upon the reasonable expectations of the parties. As we noted in *Wolfe v. Graether*, 389 N.W.2d 643 (Iowa 1986):

> > [O]ne of the parties (usually the employee) may have had in mind a definite period of employment and the other party had not. Here there is no actual "meeting of the minds"; and yet there may be a valid contract. Interpreting the elliptical expressions of the parties, the court may find that the expressions, interpreted in the light of the surrounding facts, made the understanding of one of the parties reasonable and made it unreasonable for the other party not to know that such would be the first party's understanding. In such a case, there is a contract in accordance with that understanding.

> *Id.* at 653–54 (quoting 3A A. Corbin, *Contracts* § 684, at 224 (1960)).

> Based upon the foregoing principles, we conclude that the trial court might have found on the evidence that the conditions set forth in the employee's manual formed a part of plaintiff's contract of employment.

*Id.* at 847–88. We also indicated in the *Young* decision that "[o]rdinarily, whether a particular writing has been adopted as an integrated agreement is 'a question of fact to be determined in accordance with all relevant evidence.'" [Citing Restatement (Second) of Contracts § 209, comment *c* (1981)].

In applying the principles which we approved in *Young,* we conclude that in the present case the question of whether the written personnel policies became part of plaintiff's contract is to be determined on the basis of plaintiff's reasonable expectations. Even if it was not defendant's intention that these policies confer contractual rights, a contract may be found to exist if this was the plaintiff's understanding and defendant had reason to suppose that plaintiff understood it in that light. *See* Iowa Code § 622.22 (1985). The issue of how these written personnel policies were perceived by plaintiff was, on the present record, an issue to be determined by the trier-of-fact. The trial court correctly submitted the issue to the jury.

B. *Sufficiency of consideration to support a modification of plaintiff's ex-*

*isting contract.* Defendant urges that, because its promulgation of the personnel policies was subsequent to the inception of plaintiff's employment, any modification of his contract of employment had to be supported by some independent consideration.

Although the argument is frequently made that modification of the obligations of one or more parties under an existing agreement needs to be supported by additional consideration, there is considerable doctrinal difficulty in accepting that proposition. As we recognized in *Siebring Manufacturing Co. v. Carlson Hybrid Corn Co.*, 246 Iowa 923, 927, 70 N.W.2d 149, 152–53 (1955), the power of the parties to a contract to rescind their agreement and enter into a new one in many instances obviates the need for additional consideration. That observation in the *Siebring Manufacturing* case focused on mutual rescission. Some commentators have indicated, however, that the power of one party to an agreement to waive the benefits which are conferred upon that party may justify enforcing a modified agreement with no independent consideration, even where mutual rescission has not been established.

As one writer observes:

> The broad theory finally comes to this: that the law does recognize modificatory agreements, even though they involve concessions and exclude consideration.... [T]he conflict must be resolved by and because of the parallel existence of waiver-agreements, whose history is as old as their validity has, technicalities apart, been beyond dispute.

Stoljar, *The Modification of Contracts*, 35 Can.B.Rev. 485, 528 (1957). *See also* Hudson, *Doctrine of Consideration in Iowa Revisited—Discharge or Modification of Duties*, 5 Drake L.Rev. 3, 4 (1955); Note, *Principles Underlying Modification of Contracts in Iowa*, 44 Iowa L.Rev. 693, 701 (1959). We find it to be particularly inappropriate to require an independent consideration for modification of an agreement which is conceded to have been a mere contract at will by defendant. In such situations, we believe the preferable approach is to view the issue as if an entirely new contract is being formed at the time of the alleged modification. *See Moody v. Bogue*, 310 N.W.2d 655, 660–61 (Iowa App.1981). That question is argued and discussed in the paragraphs which follow.

C. *Sufficiency of consideration to support a new contract of employment containing the written personnel policies.* We next consider defendant's contention that, even if the personnel policies are viewed as having been facially incorporated into the employment agreement, the provisions relied upon by plaintiff are not supported by the additional consideration traditionally required to support employment contracts of a permanent nature.

Defendant, in arguing this issue, relies upon the principles discussed in *Albert v. Davenport Osteopathic Hospital*, 385 N.W.2d 237, 238–39 (Iowa 1986), with regard to contracts of permanent employment. Notably, the discussion in *Albert* is aimed at the problem of interpreting language of duration in contracts of employment. In such situations, there may be a considerable amount of uncertainty as to the ability of the employer's business to sustain the employment relationship for an indefinite duration. *See Moody*, 310 N.W. 2d at 658.

In *Wolfe v. Graether*, 389 N.W.2d 643, 654–55 (Iowa 1986), decided subsequent to *Albert*, we indicated that, in the permanent employment cases, the requirement of so-called "additional consideration" is not truly a rule of consideration in the traditional sense, but rather an adjunct rule of interpretation. That rule applies in the determination of questions involving the duration of employment where that subject has not been specifically fixed in the agreement. This is not to be confused with those principles of contract law applicable to the sufficiency of consideration required to enforce a promise. *Id.* at 655.

The issue of interpretation which is presented in the present case does not involve the duration of plaintiff's employment contract. Rather, it focuses upon the legal effect of a specific written guarantee that discharge may only take place "for cause." In resolving this issue, we find no

need to resort to the adjunct rule of interpretation which requires a showing of additional consideration. Instead, the issue becomes: what does the contract provide and was it breached to plaintiff's detriment. We conclude that the jury might have resolved these issues favorably to plaintiff on the evidence presented.

■ The record would support a finding that, under the contract, discharge could only be imposed for cause. Cause, as mandated by the trial court's instructions, included the employer's sincere belief that the employee was physically unable to perform the job. Based on the conflicting evidence presented, the jury could have found that the stated reason for the employer's termination of plaintiff's employment was not sincere, and the reasons given were pretextuous. These permissible findings should not be disturbed on appeal.

Defendant separately argues that it was error to admit the written personnel policies into evidence because they were not part of the employment agreement. Because we have previously determined that the jury could have found that these written policies were contractual in nature, we must reject this contention. We also reject defendant's assertions that the district court erred in its instructions to the jury on the interpretation of written instruments and on the necessity of additional consideration.

II. *Failure to Follow the Review Procedures in the Personnel Policies.*

■ Defendant argues that, even if the personnel policies are considered to be part of plaintiff's employment contract, he should nevertheless be denied recovery because he failed to seek resolution of his dispute through appeal to the plant superintendent or district manager as provided in the employee handbook. We do not agree that plaintiff's failure to avail himself of these review procedures bars his right to maintain an action for the employer's breach of the agreement.

In order to predicate the discharge of one of the contracting parties upon a breach of condition by the other, the party claiming discharge must show the condition breached constituted the entire agreed exchange by the other party, or was expressly recognized in the agreement as a condition for his own performance. *See Union Story Trust & Sav. Bank v. Sayer,* 332 N.W.2d 316, 322 (Iowa 1983); *Canfield Lumber Co. v. Kint Lumber Co.,* 148 Iowa 207, 210, 127 N.W. 70, 72 (1910). We do not interpret the personnel manual as mandating that the employees must follow the review procedures as a condition for receiving the benefits which the agreement otherwise confers upon them.

The only prejudice which might arise on defendant's behalf as a result of plaintiff's failure to seek in-house review is the loss of an opportunity to avoid litigation. Plaintiff would have ultimately been entitled to seek relief through judicial action at some stage of the proceeding, and defendant, at no time, showed any inclination to modify its legal position. We conclude that prejudice has not been shown.

III. *Evidentiary Issues.*

In the trial of the damage issues, the district court, over defendant's timely objection, permitted plaintiff to testify concerning loss of his home by foreclosure as a consequence of the termination of his employment. Defendant contends that this evidence improperly permitted the jury to consider an area of consequential damage not recoverable in breach-of-contract litigation. Arguably, any economic loss sustained by plaintiff through the foreclosure of the mortgage on his home would be the type of consequential damage for which recovery is not permitted. Our cases indicate that ordinarily "the measure of damages recoverable for breach of contract is such amount as may reasonably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties, at the time they made the contract." *New Hampshire Ins. Co. v. Christy,* 200 N.W.2d 834, 844 (Iowa 1972).

■ The trial court's instructions to the jury, however, clearly limit plaintiff's recovery for breach of his employment contract to "the amount that the plaintiff would have earned at National By-Products, Inc., had his employment contract not

been breached." The instructions further provide that, if it was shown plaintiff became physically disabled at some point after his discharge, he could not be compensated for lost wages beyond that time. If the jury followed the trial court's instructions as to the area of compensable loss, the evidence of the foreclosure on defendant's home was not prejudicial. Moreover, the reference to foreclosure was not accompanied by any evidence of value or any other ascertainable measure of economic loss which was caused from the foreclosure. The amount of the verdict was within the evidence presented as to lost wages. Under these circumstances, we do not believe that the admission of the challenged evidence requires reversal.

We have considered all arguments presented and find no basis for reversal of the judgment.

AFFIRMED.