Margie Sue HAMILTON, a/k/a Margie Sue Sobotka, Appellant,

v.

FIRST BAPTIST ELDERLY HOUSING FOUNDATION, d/b/a Elsie Mason Manor, Appellee.

No. 87–369.

Supreme Court of Iowa.

Feb. 22, 1989.

Thomas J. McCann of Peddicord, Wharton, Thune, Foxhoven & Spencer, Des Moines, for appellant.

Patricia Shoff and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

The First Baptist Elderly Housing Foundation, d/b/a Elsie Mason Manor (Manor), terminated the employment of Margie Sue Sobotka (formerly Margie Sue Hamilton). She sued the Manor on three theories: (1) sex discrimination, (2) breach of an employment contract, and (3) violation of public policy. The district court concluded that Margie had failed to prove any of the three theories. She appealed from this decision, and we transferred the case to the court of appeals. Because the court of appeals was equally divided, the district court's judgment was affirmed by operation of law. See Iowa Code § 602.5106(1) (1987). We

granted Margie's application for further review, and we now affirm.

## I. *Background Facts.*

The Manor is a housing project for elderly and handicapped persons of low and moderate income. The project is sponsored by the First Baptist Church in Des Moines. The Department of Housing and Urban Development (HUD) has been financing the project on a twenty-year contract since 1980. All of the apartments in the Manor are subsidized by HUD except for one 2-bedroom unit.

Two boards have oversight responsibility for the project. One, the First Baptist Elderly Housing Foundation Board (Foundation Board), is the borrowing entity. The other, the First Baptist Housing Management Board (Management Board), is responsible for the day-to-day management of the project. Both are nonprofit organizations with little outside income. One important and pragmatic reason for having two separate boards is a HUD requirement that a management fee can be paid to a management company but not to a borrowing one. The Management Board has the responsibility for hiring the Manor's administrator. It hired the first one, Royce Jones, in September 1981.

Under the HUD financing arrangement and the rent subsidy contract, on-site management was required. The project was thus designed so the apartment that was not eligible for a rent subsidy would be occupied by the on-site manager as part of the manager's pay package.

Later, the Management Board decided that the apartment should be occupied by the building superintendent rather than the administrator. The rationale was that the administrator would need to be a person of the caliber who would desire a home, possibly have a family, and command an income more substantial than was earlier contemplated. The Board realized that it would be impractical to expect that type of person to occupy the on-site apartment. The Board, however, still felt it was necessary for a person from management to live on site. Such an arrangement would meet the HUD requirement of on-site management and would give residents twenty-four-hour service.

Thereafter, in November 1981, the Manor placed an ad with the Iowa Department of Job Service seeking to fill two open positions: janitor and building superintendent.

The openings were advertised as two separate positions. Further, only the job description for the superintendent made on-site living a condition of employment. The janitor's job description was silent on the matter. The superintendent's job description also provided that a rental value would be placed on the superintendent's apartment and on the utilities furnished for it. The document specified that the rental value would be considered to be part of the superintendent's pay package.

Notwithstanding the two job descriptions, there is substantial evidence to support the district court's finding that Margie and Pat Hamilton, her husband at the time, were eventually hired as a team and required to live in the apartment set aside for that purpose. Further, each was required to report one-half of the rental value for tax purposes.

In addition to the janitorial job description, Margie was given a list of Manor personnel policies when she started her employment in November 1981. The policies were somewhat modified in 1982 and placed in an employee handbook. In essence, the original and modified policies provided, among other things, a list of infractions described as noninclusive that would subject an employee to disciplinary action, the most serious of which was employment termination.

As the district court found, the couple lived on site and performed as a team until March 1983, when both were dismissed. Shortly before the couple was dismissed, the Manor discovered that Pat had been circulating notes that were threatening to Jones, the administrator. Margie, until this time, had satisfactorily performed all of her assigned duties. Further, there was no evidence suggesting that she had partic-

ipated in, or had had knowledge of, her husband's activities with the notes.

The decision to terminate Margie's employment was made by the administrator and confirmed by the Management Board. This decision was based, in part, on the fact that termination of Pat's employment necessarily destroyed the team concept and thereby the couple's ability to provide twenty-four-hour service. Further, the Board and the administrator were concerned that Margie's effectiveness would be hampered by resentment arising out of the note incident involving Pat.

The case was tried to the court as a law action. Thus, our review is for correcting errors of law. See Iowa R.App.P. 4. In such cases, findings of fact have the effect of a special verdict and are binding on us if supported by substantial evidence. Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987).

## II. *Sex Discrimination.*

Margie first contends that the district court erred when it dismissed her sex discrimination claim because she had failed to prove the claim by a preponderance of the evidence. The district court found that Margie had established a prima facie case of sex discrimination. But it also found that the Manor had articulated a legitimate, nondiscriminatory reason for her discharge that Margie had not proven was a mere pretext for sex discrimination. Upon our review of the entire record, we are convinced the district court was right.

Margie premises her sex discrimination claim on an alleged violation of Iowa Code section 601A.6(1)(a) (1981). This statute prohibits, among other things, discharge of an employee because of sex.

An analytical framework for the basic allocation of burdens and order of presentation of proof in cases alleging discriminatory treatment was first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff has the burden of establishing by a preponderance of the evidence a prima facie case of discrimination. Second, once such a prima facie case is established, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." Third, if the defendant succeeds, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the defendant was not the defendant's true reason but, rather, a pretext for discrimination. *Id.* at 802–04, 93 S.Ct. at 1824–25, 36 L.Ed.2d at 677–79; *see also Linn Co–Op. Oil Co. v. Quigley*, 305 N.W.2d 729, 732–33 (Iowa 1981) (*McDonnell Douglas* analytical framework applied in sex discrimination discharge case).

The ultimate burden of persuading the trier of fact of the discriminatory treatment rests with the plaintiff and never shifts. When the plaintiff establishes a prima facie case, a presumption arises that the defendant employer discriminated against the plaintiff. If the trier of fact believes the plaintiff's evidence and if the defendant does nothing in the face of the presumption, judgment must be entered for the plaintiff because no issue of fact remains. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 215–16 (1981).

The burden that shifts to the defendant is the burden to go forward with evidence to rebut the presumption of discrimination. This burden involves producing evidence that the plaintiff was discharged for a legitimate, nondiscriminatory reason. It is enough if the defendant raises a genuine issue of material fact as to whether the defendant discriminated against the plaintiff. The defendant is not required to persuade the court that the defendant was actually motivated by the proffered reason. *Id.* at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. The defendant's evidence, however, must clearly set forth through admissible evidence its reason for the discharge. The explanation has to be legally sufficient to justify a judgment for the defendant. *Id.* at 255, 101 S.Ct. at 1094, 67 L.Ed.2d at 216.

More specifically, the prima facie case of discrimination will be rebutted if the employer produces admissible evidence "which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257, 101 S.Ct. at 1096, 67 L.Ed.2d at 218.

Once the defendant has carried this burden, the plaintiff has the opportunity to show that the proffered reason was not the true reason for the employment decision. At this point, the plaintiff's burden merges with the ultimate burden of persuading the court that the plaintiff has been the victim of discrimination. The plaintiff may carry this burden either directly by persuading the court that a discriminatory reason more likely motivated the defendant or indirectly by showing that the defendant's proffered explanation is unworthy of credence. *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.

■ Here, the district court meticulously followed these allocations of burdens. It found that Margie had established a prima facie case of discrimination. Further, the Manor does not dispute this finding on appeal.

The Manor, however, did go forward with admissible evidence of its reason for the discharge. As to this step the district court said:

> The court also finds that the defendant has articulated a legitimate nondiscriminatory reason for the decision to terminate the plaintiff. She was hired as a team with her husband, and her husband was discharged for cause. The team was required to live on the premises and was given reduced rent on their apartment as partial compensation for the job. Once one member of the team was terminated, the employer was forced to either abandon the team concept or also terminate the plaintiff.

There is substantial evidence in the record to support these findings. At this point, the district court was convinced by this evidence that the Manor had rebutted the presumption of discrimination. Margie's husband could no longer remain at the Manor because of the threats he had made. Budgetary and economic concerns as testified to by the Manor's witnesses would not have allowed the Manor to provide separate apartments for Margie and a new superintendent. Further, allowing Margie to live off of the premises would not have been a reasonable alternative because the team concept would have been destroyed. In these circumstances, the district court could rationally conclude that the Manor's decision to terminate Margie's employment was reasonable and had not been motivated by a discriminatory animus. *Cf. Robbins v. Bush Hog/Continental Gin,* 17 Empl.Prac.Dec. (CCH) ¶ 8582 (M.D. Ala.1978) [1987 WL 108] (termination of female employee whose husband, also an employee, misappropriated funds, found to have nothing to do with sex because company had reasonable expectations of resentment by wife due to company's treatment of her spouse).

The reason for the termination was articulated clearly enough by the Manor to allow Margie an opportunity to convince the court by a preponderance of the evidence that a discriminatory reason was more likely to have motivated the Manor or that the Manor's proffered explanation was unworthy of credence. According to the district court, she failed:

> The employer having articulated a legitimate nondiscriminatory reason for the discharge, the burden was then on the plaintiff to show that the defendant's proffered reason for the discharge was a mere pretext for discrimination. Plaintiff has failed to do so.

> The court is not persuaded that the defendant would not have also terminated a man in the plaintiff's identical situation. The plaintiff's sex simply was not a motivating factor in the defendant's decision to terminate the plaintiff.

Margie's burden to overcome these last findings is a heavy one here. She must point to sufficient evidence in the record to convince us as a matter of law that a discriminatory reason more likely motivated the Manor's decision or that the Manor's proffered explanation is unworthy of credence. Our careful review of the record

reveals no such evidence. *Cf. Linn Co-Op. Oil Co.*, 305 N.W.2d at 732 ("The evidence fully substantiated district court's finding that [the employee] was terminated because the work slacked off and because she was creating disciplinary problems.").

### III. *Breach of Employment Contract.*

Margie next claims the district court erred in dismissing her breach of contract claim for failing to prove it by a preponderance of the evidence. The general rule is that an at-will employee may be terminated at any time, for any reason. *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 195 (Iowa 1985). Margie concedes this is the rule but argues that the circumstances in this case remove her from the application of the rule. At the time she was hired, Margie claims, the Manor gave her documents—a job description, performance standards, and personnel policies—that constituted a contract for employment that was not merely at-will. Further, she contends that because her discharge did not comply with the terms of the contract, the Manor is liable for all damages she sustained.

The district court rejected this argument, holding that Margie was an at-will employee. In doing so, the court predicted that we would not, as other jurisdictions have done, give effect to job security provisions found in such documents as employee manuals and handbooks. The court cited the opposing views. *Compare, e.g., Pine River State Bank v. Mettille*, 333 N.W.2d 622, 629–30 (Minn.1983) (employment for indefinite duration does not preclude job security provision in employee handbooks from being enforceable) *with Johnson v. National Beef Packing Co.*, 220 Kan. 52, 54, 551 P.2d 779, 781–82 (1976) (employment manual, stating that employees could only be terminated for cause, did not establish either an express or implied contract). When the court rendered its decision, however, it did not have the benefit of two of our recent decisions that bear on this issue: *Cannon v. National By-Products, Inc.*, 422 N.W.2d 638 (Iowa 1988), and *Young v. Cedar County Work Activity Center, Inc.*, 418 N.W.2d 844 (Iowa 1987).

Both *Cannon* and *Young* involved wrongful discharge claims. In *Cannon*, written policies in an employee handbook that prohibited dismissal except for just and sufficient cause were put in force by the employer before the employee was fired. In *Young*, an employee handbook, providing that certain discharge procedures had to be followed before employment could be terminated, was given to the employee when she started work. In each case we held that whether the job security provision in the handbook constituted a part of the employment contract depended on the parties' intentions. Further, we held in each case that this issue was a fact question. *See Cannon*, 422 N.W.2d at 639–40; *Young*, 418 N.W.2d at 845–48.

In *Young* we recognized that the precise intentions of the parties to an employment agreement are often left unexpressed and that contractual obligations may be enforced based on the reasonable expectations of the parties. In support of these principles, we quoted the following passage from 3A A. Corbin, *Contracts* section 684, at 224 (1960):

> [O]ne of the parties (usually the employee) may have had in mind a definite period of employment and the other party had not. Here there is no actual "meeting of the minds"; and yet there may be a valid contract. Interpreting the elliptical expressions of the parties, the court may find that the expressions, interpreted in the light of the surrounding facts, made the understanding of one of the parties reasonable and made it unreasonable for the other party not to know that such would be the first party's understanding. In such a case, there is a contract in accordance with that understanding.

*Young*, 418 N.W.2d at 847–48; *accord Cannon*, 422 N.W.2d at 640.

Here, too, the parties' intentions determined whether Margie's employment contract included the personnel policies detailing the circumstances in which a Manor employee could be discharged. Moreover, the issue was a fact question. Because the district court incorrectly predicted that we

would not give effect to such job security provisions in employee handbooks, it did not make any findings on the issue. The court instead found that Margie remained an at-will employee subject to dismissal at any time by the Manor.

■ Ordinarily, in law actions we reverse and remand for findings on unresolved issues of fact material to the outcome of the suit. Here that is unnecessary because of the district court's findings, quoted in division II, regarding the Manor's proffered reason for dismissing Margie. Even if we assume that the personnel policies were a part of Margie's employment contract, these other findings, which are supported by substantial evidence, rule out a breach of such a constituted contract. According to these findings, the Manor had terminated Margie's employment because the team concept would have had to be abandoned had she remained. In short, the court found she no longer met the requirements of the job.

The Manor's proffered reason for the termination is not in contravention of, or even covered by, the policy provisions in the Manor employee handbook upon which Margie relies. These provisions provide in part:

E. Disciplinary Procedure.

1. Misconduct by any employee of Elsie Mason Manor is subject to disciplinary action. The seriousness of the misconduct will determine the disciplinary action taken. The normal levels of disciplinary action will be:

a. Verbal warning

b. Written reprimand

c. Suspension or termination of employment.

Serious offenses may be dealt with by passing the first or second level of disciplinary action. Disciplinary action will be subject to the Grievance Procedure.

Clearly, the disciplinary procedure covers only misconduct. The Manor conceded and the district court found that Margie had satisfactorily performed all of her assigned duties until she left. No claim is made that she was guilty of any of the various infrac-tions listed in the handbook that could subject a Manor employee to disciplinary action. The disciplinary procedure here only identifies the various disciplinary steps that can be taken when misconduct is involved. Unlike the employer in *Cannon*, the Manor made no representations that termination of employment could take place only for limited reasons or upon following specific procedures. Margie was not discharged for misconduct; she was discharged because of a nondisciplinary business necessity that went to the heart of the employment relationship. In essence, the material consideration for the hiring—the team concept—failed when the Manor found it necessary to discharge Pat because of his misconduct. In these circumstances, we fail to see how a breach occurred when Margie was also discharged. Thus, we uphold the district court's dismissal of Margie's breach of contract claim.

IV. *Public Policy.*

Finally, Margie contends that she was discharged in violation of public policy and that the district court erred in holding otherwise. Her argument has several components but basically boils down to an assertion of sex discrimination.

We recently recognized a public policy exception to an at-will employment contract. *See Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 559 (Iowa 1988) (retaliatory discharge based on filing of workers' compensation claim by an at-will employee violates public policy and affords right of action); *accord Conaway v. Webster City Products Co.*, 431 N.W.2d 795, 799–800 (Iowa 1988). But we think our pronouncement in *Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193 (Iowa 1985), answers Margie's contention.

We said in *Northrup* that Iowa Code chapter 601A, our civil rights statute, preempts independent common law actions also premised on discrimination. *Id.* at 197. Margie failed in her bid to prove sex discrimination. *Northrup* forbids her a second bite of the apple in the form of an independent common law action also prem-

ised on sex discrimination. The district court properly dismissed her public policy claim.

### V. *Disposition.*

We have considered all of the contentions urged by the parties but have discussed only those applicable to the outcome we reach. Upon our review of the record, we conclude the district court properly dismissed Margie's sex discrimination and breach of contract claims because of her failure to prove them by a preponderance of the evidence. As to her public policy claim, we conclude it was preempted by Iowa Code chapter 601A and, thus, also properly dismissed. Finding no error, we affirm.

AFFIRMED.