Joseph TINDELL, Appellee,

v.

APPLE LINES, INC., Appellant.

No. 90–1743.

Court of Appeals of Iowa.

Oct. 29, 1991.

Brian L. Wirt of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, and David Gienapp of Arneson, Issenhuth & Gienapp, Madison, S.D., for appellant.

Barbara A. Hering of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

Apple Lines, Inc. (Apple) is a South Dakota trucking company. On March 27, 1987, Apple entered into an equipment lease agreement with Tindell. Tindell agreed to lease a truck owned by Apple with the option to buy the truck at the end of the lease. The equipment lease called for monthly payments of $681.81 of which $100 would be held in escrow to be credited against the buyout. The equipment lease also provided if Tindell failed to make two consecutive payments or its money equivalent, for whatever reason, Apple would have the right to terminate the equipment lease and retain any sums of money accumulated in the buyout fund.

At the same time, Tindell entered into an operating lease and transportation agreement (operating lease) with Apple. Under the operating lease the parties agreed Tindell would be paid seventy-seven cents per mile for hauling Apple's freight. The operating lease provided it was subject to can-

cellation by either party upon thirty days' written notice.

On March 31, 1988, Apple attempted to change the compensation rate from seventy-seven cents per mile. Apple reduced the rate to seventy-one cents per mile for loads over 1,300 miles and sixty cents per mile for deadhead miles. Tindell refused to sign the operating lease addendum and informed Apple he would not accept the rate reduction. Tindell did, however, accept loads and cash paychecks calculated at the rate of seventy-one cents per mile.

On November 4, 1987, Apple terminated both leases with Tindell without notice. Apple cited check-in call violations and late deliveries as reasons for the terminations. Apple claimed it was relieved of the thirty-day-notice provision contained in the operating lease because Tindell was delinquent in his accounts with Apple in an amount exceeding two lease payments. Therefore, under the terms of the equipment lease, Apple argued it could terminate both agreements without notice.

The trial court found Tindell had not missed two consecutive lease payments. Although Tindell's accounts showed a deficit as of the date he was terminated, the trial court determined Apple had no justification for terminating Tindell's leases without notice. The trial court reached its decision based on Apple's breach of contract in: 1) reducing its compensation rates, 2) failing to give thirty days' notice which caused Tindell to lose one month's revenues, and 3) retaining Tindell's buyout contingency fund. The trial court concluded Tindell's damages for loss of net revenue were $4,927.23.

Apple appeals, claiming the trial court erred in determining the company breached its contracts with Tindell. Apple also claims the trial court erred in computing the amount of damages.

I. *Scope of Review.* This action was tried at law to the court. Findings of fact in jury-waived cases shall have the effect of a special verdict, Iowa R.App.P. 4., and are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We construe the trial court's find-ings broadly and liberally. *Grinnell Mut. Reinsurance Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the trial court's judgment. *Id.* We are prohibited from weighing the evidence or the credibility of the witnesses. *Id.*

A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted.

*Briggs Transp. Co. v. Starr Sales Co.,* 262 N.W.2d 805, 808 (Iowa 1978).

Evidence is substantial or sufficient when a reasonable mind would accept it as adequate to reach the same findings. *Waukon Auto v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 846 (Iowa 1989). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reinsurance Co.,* 431 N.W.2d at 785.

By his pleadings, Tindell sought damages from Apple for breach of both the equipment lease and the operating lease. We address the alleged breach of the operating lease first.

II. *Operating Lease.* When Apple reduced the compensation rate the operating lease between these parties was executory. The lease had been partly performed by both parties but not completely performed by either. An executory contract may be effectively modified by one party *with the consent of the other. Davenport Osteopathic Hospital Association v. Hospital Service,* 261 Iowa 247, 253, 154 N.W.2d 153, 157 (1967). The requisite consent may be either express or implied from acts and conduct. *Id.* Whether a contract has been modified by the parties is ordinarily a question of fact. *Id.*

We must determine whether Tindell at any time consented to a modification of

the compensation rate contained in the operating lease. The record reveals Tindell refused to sign the operating lease addendum. In addition, Tindell informed Apple he would not accept the rate reduction. Tindell accepted loads and cashed paychecks calculated at the reduced rate. We are satisfied, however, Tindell's mere acceptance of loads and less compensation than prescribed in the operating lease did not constitute an implied consent to Apple's attempt to modify it. By accepting payments under protest and continued performance on his part, Tindell reserved the right to recover for breach, if any, by Apple. *Id.* at 255, 154 N.W.2d at 158.

■■■ The question we must now resolve is whether Apple's refusal to reimburse Tindell pursuant to terms of the operating lease was in fact a breach. An unjustified failure to perform all or any part of what is promised in a contract is a breach for which the aggrieved party is entitled to be compensated in damages. *Id.* at 262, 154 N.W.2d at 162. We conclude Apple's failure to pay in accord with the operating lease constituted a breach. Each time Apple failed to remit the full amount due Tindell under the terms of the lease constituted a distinct and independent breach upon which an action would lie. Tindell elected to continue performance, deferring any action until there had been several breaches. This he had the right to do. *Id.* at 263, 154 N.W.2d at 163. The trial court found Tindell's amount of damages resulting from the compensation rate reduction to be $1,770.27. We agree.

■■■ Additionally, under the terms of the operating lease, Tindell was entitled to thirty days' written notice before the lease could be terminated. Apple did not comply with this provision of the lease. Had Apple complied, Tindell perhaps could have hauled freight for another company for a minimum of thirty days. However, Apple's conduct in terminating the parties' agreements effectively prevented Tindell from driving for Apple or any other company because Apple retained the right to approve any operating lease of the truck to another company. Therefore, we agree

with the trial court's conclusion Tindell was entitled to thirty days of lost revenue. We affirm these issues.

■■■ III. *Equipment Lease.* We now turn our discussion to the equipment lease. The relevant language found in the equipment lease is as follows:

> It is further agreed by and between the parties hereto that in the event Second Party [Tindell] shall not pay two (2) consecutive payments, or any time when Second Party may be delinquent for two (2) or more months, or its equivalent in money for whatever reason. First Party [Apple], in its sole discretion, shall have the right and privilege of terminating this Lease Agreement.
>
> . . . .
>
> . . . In the event Second Party defaults in any of the provisions herein, it is hereby specifically agreed by and between the parties to this Lease Agreement that any and all monies paid by Second Party to First Party, including the amount paid by Second Party to said escrow account, shall be forfeited, and shall be transferred to and vested in First Party as liquidated damages, and this Agreement shall be terminated.

The trial court found Tindell had not missed two consecutive lease payments. Apple does not contend otherwise. Rather, Apple argues it was not required to give the thirty days' notice contained in the operating lease because Tindell was delinquent in his maintenance and personal accounts in an amount exceeding two lease payments. Therefore, under the terms of the equipment lease, Apple asserts it could terminate the agreement without notice and retain the amounts accrued in the buy-out fund as liquidated damages.

Apple's argument ignores the finding of fact made by the trial court. The trial court determined Tindell was entitled to credit for the underpayment resulting from Apple's breach when it unilaterally reduced the rate of compensation contained in the operating lease. We agree with the trial court.

It is clear Apple owed Tindell payments at the rate of seventy-seven cents per mile and paid him only seventy-one cents per mile under the operating lease. It was proven at trial this arrearage is in excess of the amount Apple claims Tindell to be in default under the equipment lease. The sums Tindell earned under the operating lease enabled him to meet his obligations under the equipment lease. The trial court rightly determined Tindell was not in arrears in an amount claimed by Apple. He had not missed two consecutive lease payments under the equipment lease. Apple terminated the operating lease because of Tindell's late deliveries and failure to call the dispatcher as required.

We hold Apple's termination of the equipment lease without notice was not justified. Tindell was entitled to thirty days' notice of termination. Tindell is entitled to thirty days of lost revenue. Apple is not entitled to retain the buyout fund as liquidated damages for termination of a contractual relationship directly resulting from its own breach. We affirm on these issues.

IV. *Damages.* The trial court concluded Tindell's damages for loss of net revenue to be $4,927.23. The amount was calculated as follows:

| | |
|---|---|
| Mileage Rate Change | $1,770.27 |
| Lost Revenue | 2,526.96 |
| Buyout Fund | 2,043.00 |
| Insurance Proceeds | 3,085.00 |
| Personal Savings | 125.00 |
| Subtotal | $9,550.23 |
| Less: Amounts due defendant on 11/9/88 | (1,913.00) |
| Less: Costs of Repairs | (2,710.00) |
| Total | $4,927.23 |

There is substantial evidence in the record to support this calculation. We affirm the trial court on this issue. Costs of this appeal are taxed to Apple.

AFFIRMED.