# IN THE SUPREME COURT OF IOWA

No. 15–0105

Filed October 14, 2016

**VIRGIL JOHNSON** and **VIRGIL JOHNSON TRUCKING,**

>   Appellants,

vs.

**ASSOCIATED MILK PRODUCERS, INC.,**

>   Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Allamakee County, Margaret L. Lingreen, Judge.

Dairy cooperative seeks further review of decision of court of appeals that reversed summary judgment on the terms of a milk-hauling contract. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**

John S. Anderson and Stephen J. Belay of Anderson, Wilmarth, Van Der Maaten, Belay, Fretheim, Gipp & Zahasky, Decorah, for appellants.

Matthew C. Berger of Gislason & Hunter LLP, New Ulm, Minnesota, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide which rule of contract law applies to resolve a standoff over a change in hauling fees paid by a dairy cooperative to an independent contractor who transported milk from farms to the co-op's facilities. The parties agree their oral contract could be terminated at will by either side upon reasonable notice. The co-op notified the hauler it would be phasing out a $100 trip fee it had been paying to the hauler in addition to agreed hauling rate. The hauler objected, but continued to transport milk and bill the co-op for the trip fees. The co-op continued receiving shipments and paid the agreed hauling rate without the trip fees. Months later, the hauler sued for the unpaid trip fees, and the co-op declared the contract terminated.

The co-op moved for summary judgment, asserting it could modify the terms of the at-will contract upon reasonable notice and the hauler accepted the modification by continued performance. The hauler resisted and, without contesting the reasonableness of notice, argued the co-op improperly had attempted to modify an existing contract without consideration or consent. The district court granted summary judgment for the co-op, concluding, based on the undisputed facts, that the change in payment terms was a new offer the hauler accepted by performance. The court of appeals reversed, concluding questions of fact as to acceptance precluded summary judgment. We granted the co-op's application for further review.

For the reasons explained below, we hold that in this at-will contract, the co-op could alter payment terms prospectively upon reasonable notice. The co-op made it clear that it would pay according to a new schedule. The hauler understood this. The hauler faced a choice of accepting the new terms or ceasing performance. The hauler accepted

by performance notwithstanding its protests. Accordingly, we vacate the decision of the court of appeals and affirm the district court's summary judgment dismissing the hauler's claims.

## I. Background Facts and Proceedings.

The record establishes the following facts as undisputed. On September 1, 2000, Associated Milk Producers, Inc. (AMPI) entered into an oral agreement with Virgil Johnson, the sole proprietor of Virgil Johnson Trucking. AMPI is a cooperative of dairy farmers that receives milk produced by its members, processes the milk into butter and cheese, and sells the dairy products. AMPI contracts with independent haulers to transport milk from the farms to its facilities. Haulers are paid directly by AMPI, which in turn passes through those costs to its members. Johnson was hired as an independent contractor to deliver milk from the dairy farms to a station in Fredericksburg, Iowa, where the milk was transferred from the hauler trucks to a semi-tanker for transport to AMPI's processing facilities. For this service, AMPI agreed to pay Johnson a "hauling rate" of $0.50 per one hundred pounds of milk delivered, a rate based on the distance between the various farms and Fredericksburg.

Johnson also later offered to haul milk from Fredericksburg to AMPI's facilities in Arlington and Des Moines, Iowa. AMPI agreed to pay Johnson the standard hauling rate, plus an additional "trip fee" for that service. The trip fee was based on the amount that AMPI had been paying another semi-driver ($1.00 per mile) and the distance from Fredericksburg to the facilities. Johnson and AMPI negotiated the trip fee to be $100 for deliveries to Arlington and $340 for deliveries to Des Moines.

The duration of the contract was unstated. Johnson understood the agreement to be "for the indefinite future." Johnson acknowledged this was typical of hauling contracts in the milk industry because the dairy farmers remained free to move on and sell their milk to competing processors at any time. Neither party asserts there were any assurances given about the duration of the contract, and Johnson stated he believed he had the right to "retire" or "to stop[] performance under the contract" at any time.

The parties continued working together for twelve years. They modified their oral agreement several times as circumstances changed. For example, in 2005 or 2006, the station in Fredericksburg closed, and Johnson began delivering milk directly from the farms to AMPI's facilities in Arlington and Des Moines. AMPI agreed to increase Johnson's base hauling rate three times, from $0.50 per hundred pounds in 2000 to $0.51 per hundred in 2006, $0.545 in 2008, and $0.565 in 2009. Johnson purchased three more delivery routes from AMPI and other haulers. AMPI made no representations regarding how long Johnson could perform hauling services on these routes. Johnson understood when he purchased the routes that "those patrons had the right and were free to leave at any time."

On June 19, 2012, Don DeVelder, senior vice president of AMPI, notified Johnson by letter that AMPI was commencing a study "regarding the inconsistency of hauler payment programs" to rectify discrepancies in how milk haulers were paid for comparable work. Under the new program, AMPI sought to "pay every hauler in the same way by using the same formula, which will be based on miles driven, stops made and pounds of milk picked up." AMPI stated that the study might result in "pay rate adjustments" for haulers and invited them to offer input on the

new program. Johnson, through his attorney, sent a letter back to DeVelder stating Johnson was unwilling to renegotiate the terms of their oral agreement.

Over a year later, on July 31, 2013, the division manager of AMPI wrote Johnson to inform him that AMPI had completed the study and would be implementing changes to rates in several steps over the next few months. Specifically, the $100 trip fee Johnson had been paid for deliveries to Arlington was to be phased out: the fee would be reduced to $75 in September, to $50 in October, to $25 in November, and eliminated in December. Johnson responded by letter that he did not agree to the reductions, but later admitted he understood AMPI would no longer pay the trip fees.

In September, AMPI began paying Johnson under the program announced weeks earlier, thereby reducing the trip fee to $75 for deliveries that month. On October 7, Johnson submitted an invoice to AMPI charging $100 for trip fees and stating that he had received insufficient payment for his September hauls. AMPI's manager returned the invoice with a handwritten note at the bottom, stating, "Virgil, [b]ill paid according to the attached notice dated July 31, 2013." Johnson continued to bill AMPI at $100 for the trip fees. AMPI did not return the next several invoices with comments, but paid only the base hauling rate and reduced trip fees as set forth on the July 31 schedule. Johnson understood AMPI would not pay his $100 trip charges but nevertheless continued hauling milk from the farms to AMPI.

On December 17, AMPI's manager sent another letter to Johnson, reiterating the payment policy implemented months earlier. The letter stated that after November, Johnson would be paid at his current hauling rate of $0.565 per one hundred pounds delivered, but would no

longer be receiving any trip fee. The letter concluded by stating, "If this is not acceptable with you let me know so we can make other arrangements to haul AMPI member's milk."

On January 9, 2014, Johnson filed a civil action against AMPI in the Iowa District Court for Allamakee County, alleging claims for breach of contract, promissory estoppel, and unjust enrichment. Johnson claimed that AMPI unilaterally attempted to modify the oral agreement by its July 31, 2013 letter and did so without consideration or acceptance. AMPI denied liability in its answer and alleged as an affirmative defense that the July 31, 2013 modification was effective or, alternatively, that a new contract had been formed without the $100 trip fee.

After filing this lawsuit, Johnson continued to deliver milk for AMPI throughout 2014, submitting monthly invoices to AMPI that included the $100 trip fee. Early that year, Johnson added language to his invoice stating, "A 15% interest charge will be added on all unpaid balances beginning January 1, 2014." Johnson had not charged AMPI interest previously, nor had AMPI agreed to pay interest. Johnson continued to submit invoices to AMPI for the $100 trip fees plus interest. Johnson billed AMPI in this fashion until AMPI terminated the arrangement in December.

Meanwhile, on September 26, AMPI filed a motion for summary judgment. AMPI argued its July 31, 2013 memorandum effectively operated as a notice of termination of the parties' at-will oral agreement and a proposal for a new contract with trip fees phased out. By continuing to deliver milk, AMPI argued, Johnson consented to the terms of the new agreement. Additionally, AMPI asserted the existence of a contract precluded Johnson's claims for unjust enrichment and promissory estoppel.

Johnson filed a resistance to the motion on October 22. Johnson argued that AMPI failed to terminate the existing agreement and that summary judgment was precluded by factual disputes as to whether AMPI's attempted unilateral modification altered the agreement's terms. Johnson never argued he was not given reasonable notice of the change in terms. On November 12, Steven Faust, division manager of AMPI, sent Johnson a letter terminating his employment. AMPI explained the termination was because "in the course of [the] lawsuit, [Johnson] ha[d] attempted to spin [his] continued deliveries to AMPI as evidence that AMPI agreed to continue paying [him] the $100.00 'trip charge.'" The letter stated,

> AMPI's communications to you have been clear that we were unwilling to continue paying the "trip charge" beginning on December 1, 2013. In order to avoid any confusion regarding these issues, however, please be advised that the contractual relationship between AMPI and you is hereby **TERMINATED** effective (30) days from the date of this letter.

The division manager sent a similar letter to Johnson on December 10, 2014, again stating the contractual relationship between AMPI and Johnson was "**TERMINATED**." Johnson's final invoice to AMPI in December asserted AMPI owed a total of $121,375 for hauling charges plus interest of $14,775 for the past seventeen months of deliveries.

AMPI deposed Johnson about his understanding of the July 31, 2013 communication phasing out the trip fees. He testified as follows:

> Q. Now, would you agree with me that in this letter AMPI is informing you that it is no longer going to pay the trip charge beginning December 1st, 2013? A. I can see that, yes.
>
> Q. You agree that's what the letter was telling you? A. Yes.
>
> Q. And then AMPI was going to phase that out over a series of months leading up to that? A. Yes.

. . . .

Q. Now, at the time you received this letter, you understood that AMPI was not going to pay the trip charge, correct? A. Yes.

Q. Did you tell AMPI that, "If you are not going to pay the trip charge, I'm no longer going to deliver milk?" A. No, I did not.

Q. Did you continue to deliver milk after you received this letter? A. I did.

Q. When you continued delivering milk, you understood that AMPI was not going to pay the trip charge, is that correct? A. That's correct.

Johnson also testified about his reaction to AMPI's December 17, 2013 letter reiterating its unwillingness to pay the trip charge:

Q. You understood, when receiving this letter, that AMPI was not willing to pay the trip charge, correct? A. Yes.

Q. And that if you were going to insist on the trip charge, that your relationship with AMPI was going to be terminated? A. Yes.

Q. Did you contact AMPI, after receiving this letter, and tell them that this arrangement was not acceptable? A. Um, we drafted two letters, and I can't remember when we drafted them. I think it was before this. I don't think we drafted anything after this. No.

Q. Okay. You continued to deliver milk? A. Yes.

Q. And you delivered that milk, knowing that AMPI was not going to pay the trip charge? A. Yes.

On November 24, the district court granted AMPI's motion for summary judgment. The district court ruled that an at-will contract may be terminated or modified at any time as a condition of further performance. Accordingly, the court concluded that Johnson, by "continu[ing] to haul milk to AMPI's plant in Arlington, Iowa, after having been notified of the change in the trip charge payment and without any other agreement having been reached with AMPI," thereby accepted the new terms as a matter of law. The district court also granted summary judgment dismissing Johnson's unjust enrichment and promissory

estoppel claims on grounds that the law will not imply a contract when an express contract exists. *See Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985).

On December 14, 2015, Johnson filed a motion to amend and enlarge the district court's summary judgment ruling, which the district court denied. Johnson appealed the summary judgment, and we transferred the case to the court of appeals. The court of appeals reversed, concluding the oral agreement between AMPI and Johnson constituted a bilateral contract that could not be modified without mutual assent and consideration. The court of appeals noted the contract was at-will, but it distinguished our employment-at-will precedent because Johnson was an independent contractor, not an employee of AMPI. The court of appeals stated, "Although the facts are primarily undisputed, those facts do not support Johnson's acceptance of [AMPI's] proposed modification as the only, or probable, conclusion that can be drawn from those facts." Thus, the court of appeals held that questions of fact as to Johnson's consent precluded summary judgment. We granted AMPI's application for further review.

## II. Standard of Review.

Our review of an order granting summary judgment is for correction of errors at law. *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *United Suppliers, Inc. v. Hanson*, 876 N.W.2d 765, 772 (Iowa 2016) (quoting *Robinson v. Allied Prop. & Cas. Ins. Co.*, 816 N.W.2d 398, 401 (Iowa 2012)). An issue of fact is material "only if 'the dispute is over facts that might affect the outcome of the suit.' " *Peak*, 799 N.W.2d at 542 (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa

2001)). "Summary judgment is proper if the only issue is the legal consequences flowing from undisputed facts." *Id.* (quoting *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993)). "We examine the record in the light most favorable to the nonmoving party." *United Suppliers*, 876 N.W.2d at 772.

### III. Analysis.

We must decide which rule of contract law governs this dispute over one party's change in the terms of an ongoing commercial relationship and the other party's objection and continued performance.[1] The district court granted summary judgment for AMPI based on the rule that an at-will contract is terminable or modifiable by either party upon reasonable notice. The district court concluded that Johnson accepted AMPI's new terms of the agreement by continuing to haul milk. The court of appeals reversed, applying a different rule that modification of an existing contract requires mutual assent and consideration. We conclude the district court correctly applied the governing rule.

Johnson and the court of appeals relied on caselaw involving contracts that were not terminable at will. In one such case, we said that a contract may be modified by one party only "with the consent of the other." *Davenport Osteopathic Hosp. Ass'n v. Hosp. Serv., Inc.*, 261 Iowa 247, 253, 154 N.W.2d 153, 157 (1967) ("Stated conversely one party to a contract cannot alter its terms unilaterally or without assent of the other party."). "[T]he requisite consent may be either express or implied from acts and conduct." *Id.* "[W]hether a contract has been modified by the parties thereto is ordinarily a question of fact." *Id.* In *Davenport*

---

[1]Johnson does not challenge the district court's summary judgment dismissing his promissory estoppel or implied contract claims.

*Osteopathic Hospital Association*, a hospital contracted with a health insurer to treat the insurer's subscribers under an agreed reimbursement schedule. *Id.* at 251, 154 N.W.2d at 156. Their written contract included a provision allowing either party to terminate the agreement "on 90 days written notice." *Id.* After paying under the agreed schedule for several years, the insurer, without invoking the termination provision, announced that it was changing the reimbursement formula, effective seventeen months later. *Id.* The hospital continued to provide services to the insurer's subscribers at the lower rate, but protested the reduction and filed suit for breach of contract. *Id.* The district court ruled that the hospital, by failing to terminate the contract and "by continuing to accept [the lower] compensation . . . impliedly acquiesced in the modification." *Id.* at 252, 154 N.W.2d at 156. We reversed, concluding that the hospital, which had "openly and repeatedly voiced objection to the change," did not assent to the modification. *Id.* at 254, 154 N.W.2d at 158. We held the hospital could continue to perform, accept payments under protest, and sue for breach to recover the difference. *Id.*

Johnson also refers to *Tindell v. Apple Lines, Inc.*, 478 N.W.2d 428 (Iowa Ct. App. 1991). There, Joseph Tindell entered into an operating lease to haul freight for Apple Lines. *Id.* at 429. Their contract "provided it was subject to cancellation by either party upon thirty days' written notice." *Id.* at 429–30. A year later, Apple Lines attempted to reduce the compensation rate without canceling the contract. *Id.* at 430. Tindell refused to sign an addendum and told Apple Lines he would not agree to the lower rate, but he continued to "accept loads and cash paychecks calculated at the [lower] rate." *Id.* at 430. Tindell sued for breach, and the district court ruled in his favor, awarding damages at the original

contract rate. *Id.* at 430. The court of appeals affirmed, holding that "[b]y accepting payments under protest and continued performance on his part, Tindell reserved the right to recover for breach." *Id.* Tindell and *Davenport Osteopathic Hospital Association* are good law for the modification of an existing contract with a termination provision neither party elects to exercise. When neither side invokes the termination clause, mutual consent is required to modify the contract. *See Tindell*, 478 N.W.2d at 430.

We have a different rule for modifying at-will contracts. An at-will contractual "relationship is terminable by either party at any time, for any reason, or for no reason at all." *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 144 (Iowa 2013) (quoting *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109 (Iowa 2011)). Contracts at will can be terminated by either party upon reasonable notice. *C.C. Hauff Hardware, Inc. v. Long Mfg. Co.*, 257 Iowa 1127, 1131, 136 N.W.2d 276, 279 (1965). A contract for services is "terminable at will only if we cannot ascertain a durational term." *Shelby Cty. Cookers, L.L.C. v. Util. Consultants Int'l, Inc.*, 857 N.W.2d 186, 192 (Iowa 2014).[2] Johnson and AMPI agree that their

---

[2]We find the Restatement (Second) of Contracts instructive. *Shelby Cty. Cookers*, 857 N.W.2d at 192. "When the contract calls for successive performances but is indefinite in duration, it is commonly terminable by either party, with or without a requirement of reasonable notice." Restatement (Second) of Contracts § 33 cmt. *d*, at 94 (Am. Law Inst. 1981). We may also look to Iowa's Uniform Commercial Code (U.C.C.) for guidance, even though the U.C.C. does not apply to contracts for services. *Semler v. Knowling*, 325 N.W.2d 395, 399 (Iowa 1982) ("Exclusion from Article 2, however, does not foreclose the application of its policies and reasons. '[Courts] have recognized the policies embodied in an act as applicable in reason to subject-matter which was not expressly included in the language of the act.' ") (alteration in original) (quoting Iowa Code Ann. § 554.1102 cmt. 1 (1981)). "Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." Iowa Code § 554.2309 (2013).

contract was at-will; accordingly, we apply the rule governing modification of at-will contracts.

Contracts terminable at will are *modifiable* at will. *Cannon v. Nat'l By-Prods., Inc.*, 422 N.W.2d 638, 641 (Iowa 1988). A party that unilaterally modifies an at-will contract effectively terminates the old agreement and offers new terms for acceptance. *See id.* For example, in *Cannon*, James Cannon sued his former employer for wrongful termination, relying on a personnel policy adopted after he started work that permitted termination only for cause. *Id.* at 639–41. The employer asserted that the policy did not modify Cannon's preexisting contract of employment because the modification was not supported by independent consideration. *Id.* at 641. We disagreed, noting "the power of the parties to a contract to rescind their agreement and enter into a new one in many instances obviates the need for additional consideration." *Id.* We stated,

> We find it to be particularly inappropriate to require an independent consideration for modification of an agreement which is conceded to have been a mere contract at will by defendant. In such situations, we believe the preferable approach is to view the issue as if an entirely new contract is being formed at the time of the alleged modification.

*Id.* (citing *Moody v. Bogue*, 310 N.W.2d 655, 660–61 (Iowa Ct. App. 1981) (per curiam)). We held the modified policy requiring for-cause termination became part of Cannon's employment contract and, on that basis, affirmed the judgment for wrongful termination. *Id.* at 641–42.

When one party modifies an at-will contract, the other party may choose to accept the new terms or discontinue the relationship:

> [A]n employment contract terminable at will is subject to modification at anytime by either party as a condition of its continuance. The employee's only alternative is to accept the new conditions or quit; an employee's decision to continue to

work, knowing the newly proposed terms, results in the employee's acceptance as a matter of law.

*Moody*, 310 N.W.2d at 660–61 (citations omitted). The court of appeals applied that principle in *Moody*. *Id.* Gary Moody's employer advised Moody that he was overpaid and would be denied a bonus if he refused to take on additional management responsibilities. *Id.* at 657. Moody refused extra duties and filed suit after he was denied the bonus. *Id.* The court of appeals held that by continuing employment after being notified the bonus was contingent upon extra duties, Moody accepted the modification. *Id.* at 661; *see also Clasing v. Hormel Corp.*, 993 F. Supp. 2d 960, 977 n.8 (N.D. Iowa 2014) (recognizing that parties may modify at-will contract upon reasonable notice); *Viafield v. Engels*, No. 15–1663, 2016 WL 4054175, at *2 (Iowa Ct. App. July 27, 2016) ("Given the at-will employment relationship, Viafield could modify [its personnel policies] at any time . . . ."); *Willets v. City of Creston*, 433 N.W.2d 58, 62 (Iowa Ct. App. 1988) (concluding the employer had right to change sick leave benefits in an at-will employment contract and the "employee's decision to continue to work, knowing the newly proposed terms, results in the employee's acceptance as a matter of law").

We do not require formalistic language terminating an at-will contract before a change in terms will be effective going forward. *See Moody*, 310 N.W.2d at 660 (determining that statements informing Moody his bonus would be eliminated if he refused management responsibilities "effectively notified" Moody of the modification); *see also DiGiacinto v. Ameriko-Omserv Corp.*, 69 Cal. Rptr. 2d 300, 305 (App. 1997) (noting an approach that required formalistic assent to modify at-will agreements would "encourage[] employers to fire employees" that did not accept the modification and hire them back immediately under

modified terms) (quoting *Stieber v. Journal Publ'g Co.*, 901 P.2d 201, 204 (N.M. Ct. App. 1994)). In an at-will contract, a party who gives notice of a changed term effectively offers a new contract in place of the existing one, which the other party may accept by continued performance. *See Cannon*, 422 N.W.2d at 641.

Johnson and the court of appeals distinguish the foregoing cases as applying to at-will contracts with employees but not independent contractors. They rely on *Harvey v. Care Initiatives, Inc.*, in which we recognized "a long-standing distinction in the law between employees and independent contractors." 634 N.W.2d 681, 683 (Iowa 2001). In *Harvey*, we declined to extend the tort of wrongful discharge to independent contractors. *Id.* at 686. We noted the tort was recognized to address the "inequity of the bargaining position in a typical at-will employer-employee relationship" and concluded that independent contractors, who "have greater control and flexibility in their work and in the hiring process," did not need the protection of a wrongful-discharge tort. *Id.* at 684. We elaborated,

> The distinct differences in the nature of the relationship between independent contractors and at-will employees not only suggest a greater need to protect at-will employees, but existing principles of contract law provide independent contractors with remedies not available to employees. Thus, an independent contractor can not only negotiate the circumstances governing termination of a contract, but has contract remedies to enforce all expressed or implied terms of a contract.

*Id.* (footnote omitted) (citations omitted). But these differences between employees and independent contractors cut against Johnson. He seeks greater protection as an independent contractor, yet we reached the opposite conclusion in *Harvey* favoring greater protection for employees. Employers may modify contracts with at-will employees prospectively.

Nothing in *Harvey* supports treating independent contractors *more* favorably than employees.

Moreover, there is ample authority allowing unilateral modifications to at-will service contracts with independent contractors as well as employees. The United States Court of Appeals for the Fifth Circuit applied this principle to a milk-hauling contract involving similar facts in *W.G. Pettigrew Co. v. Borden, Inc.*, in which an independent contractor worked as a distributor for a dairy and was paid for delivering milk to its customers. No. 97–40010, 1997 WL 589344, at *1 (5th Cir. Sept. 8, 1997). The dairy changed its compensation terms over the hauler's objection. *Id.* at *2. The hauler continued performing but later sued for breach of contract. *Id.* The federal district court granted the dairy's motion for summary judgment. *Id.* The Fifth Circuit affirmed, stating,

> As an at-will contract, the distributorship could be modified by either party as a condition to the continuation of the relationship. In general, when a party to an at-will contract notifies the other of changes in the contract terms, the other must either accept the terms or terminate the contract. If the party continues to perform under the contract with knowledge of the changes made by the other party, the former is deemed, as a matter of law, to have accepted the changes.

*Id.* at *3 (citation omitted).

This principle was utilized in *Cascade Auto Glass, Inc. v. Progressive Casualty Insurance Co.*, when an insurance company contracted with a vendor to repair its insured vehicles. 145 P.3d 1253, 1254 (Wash. Ct. App. 2006). The contract was terminable at will by either party. *Id.* at 1255. When the insurer initiated a new pricing policy, the vendor argued the unilateral modification was ineffective. *Id.*

at 1257. The Washington Court of Appeals allowed the unilateral change:

> [A] terminable-at-will contract may be unilaterally modified. The same rule applies in at-will employment agreements, where an employer may unilaterally change policies and procedures set forth in an employee handbook so long as the employee receives reasonable notice of the change. In such cases, a new contract is formed when the employer communicates the new terms (offer), the employee works after receiving the notice (acceptance), and the employee continues in employment although free to terminate (consideration).

*Id.* (citations omitted).

Other courts agree, holding at-will contracts with independent contractors can be unilaterally modified. *See, e.g., Moholt v. Dooney & Bourke, Inc.*, 63 F. Supp. 3d 1289, 1300–01 (D. Or. 2014) (concluding independent sales representative's contract could be modified at any time because it was terminable at will); *Builders Supply Corp. v. Shipley*, 341 P.2d 940, 941 (Ariz. 1959) (holding at-will contract between independent hauler and brick manufacturer unilaterally modifiable); *Bass v. Prime Cable of Chi., Inc.*, 674 N.E.2d 43, 50–51 (Ill. App. Ct. 1996) (determining contract between cable company and customers was terminable at will, and therefore, cable company could unilaterally modify terms by discontinuing free cable guide); *Garber v. Harris Trust & Sav. Bank*, 432 N.E.2d 1309, 1314 (Ill. App. Ct. 1982) (holding that cardholder agreements between issuers and cardholders were terminable at will, and therefore, issuers could modify terms); *Associated Petroleum Prods., Inc. v. Nw. Cascade, Inc.*, 203 P.3d 1077, 1080 (Wash. Ct. App. 2009) (concluding contract between diesel fuel supplier and construction company was modifiable at will with reasonable notice). Johnson cites no authority to the contrary.

We hold that the principle of contract law allowing unilateral changes to at-will contracts upon reasonable notice applies to independent contractors as well as employees. When AMPI announced in July 2013 it was phasing out the $100 trip fees, Johnson could "accept the new conditions or quit." *Willets*, 433 N.W.2d at 62. Johnson's decision to continue hauling milk, "knowing the newly proposed terms, results in [his] acceptance as a matter of law." *Id.*[3]

Johnson's protests to AMPI's modification phasing out the trip fee were ineffective in light of his continued performance. In *Schoppert v. CCTC International, Inc.*, the plaintiff "objected continually" to an employer's unilateral modification of his commission. 972 F. Supp. 444, 447 (N.D. Ill. 1997). Yet the court found his actions spoke louder than his words:

> Even crediting Schoppert's version that he "objected continually" to the Modification, as we must on a motion for summary judgment, his actions in continuing to work for over two and a half years, without any demonstration that CCTC might reconsider its ultimatum to him, belie those verbal objections. Schoppert has not indicated that he ever told anyone at CCTC that he would only work under the pre-

---

[3] *See also Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 990 (2d Cir. 1991) (recognizing that if one party imposes a unilateral modification and the other party continues to perform, recovery for breach is precluded); *Martin v. Airborne Express*, 16 F. Supp. 2d 623, 632 (E.D.N.C. 1996) ("At any rate, Martin's decision to remain in AMR Distribution's employ after notification of the restructuring negates any related breach of contract claim."); *Kauffman v. Int'l Bhd. of Teamsters*, 950 A.2d 44, 48 (D.C. 2008) ("[N]either party to at-will employment is bound to continue performance, and thus courts properly view future performance by each as valid consideration for the change in terms."); *Geary v. Telular Corp.*, 793 N.E.2d 128, 133 (Ill. App. Ct. 2003) ("Plaintiff accepted the April 1996 modifications to the compensation plan when he accepted payment of commissions under the April 1996 plan and continued employment."); *Brett v. City of Eugene*, 880 P.2d 937, 939 (Or. Ct. App. 1994) ("By continuing to work for an employer after the employee is aware of a change in the employer's policies, the employee impliedly accepts the change in his or her employment contract."); *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) ("If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law.").

1991 terms, or that his continued performance was in any way conditioned on the retention of his earlier commission structure. Nor is there any evidence that the 1991 Modification remained open to further negotiation after the December 1991 meeting. In these circumstances, Schoppert's continuing to work for over two and a half years while receiving commissions under the new structure must be seen in legal terms as an acceptance of the 1991 Modification, grudging and protest-filled as that acceptance may have been. The old saw "actions speak louder than words" has more than a grain of truth to it, and we adhere to it where, as here, a party's words are contradicted by his actions.

*Id.*; *see also Gebhard v. Royce Aluminum Corp.*, 296 F.2d 17, 19 (1st Cir. 1961) (rejecting "Plaintiff's explanation . . . that thereafter 'he accepted the checks because he had to,' but that he never agreed to any change").

We reach the same conclusion. Johnson admitted in his deposition that he knew AMPI would refuse to pay the trip fees he continued to bill. He understood that under the new payment program, he would only be paid the base hauling rate. As a matter of law Johnson accepted AMPI's new terms by his conduct in continuing to haul milk and accept payments, notwithstanding his protests. The district court correctly ruled that Johnson's continued performance accepted AMPI's modification to their at-will contract as a matter of law.

**IV. Disposition.**

For these reasons, we vacate the decision of the court of appeals and affirm the district court's summary judgment dismissing Johnson's action.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT SUMMARY JUDGMENT AFFIRMED.**