# IN THE SUPREME COURT OF IOWA

No. 22–1331

Submitted February 22, 2023—Filed April 28, 2023

**IN THE MATTER OF THE MEDICAL ASSISTANCE POOLED SPECIAL NEEDS TRUST OF STEVEN MULLER.**

**THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC.,**

Appellant,

vs.

**IOWA DEPARTMENT OF HUMAN SERVICES,**

Appellee.

---

Appeal from the Iowa District Court for Scott County, Patrick A. McElyea, Judge.

The trustee of a pooled special needs trust appeals the district court's grant of summary judgment order in favor of the Iowa Department of Human Services. **REVERSED AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Elizabeth R. Meyer, Jana Weiler, and Elizabeth A. Etchells of Dentons Davis Brown PC, Des Moines, for appellant.

Brenna Bird, Attorney General, Laura F. Kron, Assistant Attorney General, and Benjamin C. Chatman, Iowa Department of Human Services, for appellee.

**OXLEY, Justice.**

This case involves the same parties and legal issues as another case filed today, *In re the Medical Assistance Pooled Special Needs Trust of Scott Hewitt*, ___ N.W.2d ___ (Iowa 2023). In both cases, The Center for Special Needs Trust Administration, Inc. (the Center) acted as trustee over pooled special needs trust subaccounts for the benefit of disabled Iowans who received medical services paid through Medicaid. Following their deaths, the Center retained all residual funds in their trust subaccounts. The Iowa Department of Human Services (DHS),[1] which administers Iowa's Medicaid program, sought judicial intervention in both cases to obtain a detailed accounting of what the Center had done with the retained funds and payment of any funds that were improperly retained. In *Hewitt*, the district court decided in the Center's favor that DHS was not entitled to more information, *id.* at ___, but in this case, the district court decided in favor of DHS. Not only did the district court here decide DHS was entitled to more information, it also ordered the Center to pay DHS all of the residual funds it had retained from Steven Muller's trust subaccount.

We must therefore decide who gets the $115,890.98 balance left in Mr. Muller's subaccount at the time of his death, which turns on whether the trustee properly "retained" the funds and satisfied its accounting obligations. Having considered the intersection of Medicaid trust provisions and the Iowa

---

[1]Prior to the district court's ruling in this case and the notice of appeal, DHS began the transition process into the Iowa Department of Health and Human Services (HHS). 2022 Iowa Acts ch. 1131, § 51. For consistency, we will refer to it as DHS throughout this opinion.

Trust Code raised in these cases, we conclude the Center provided an adequate accounting and reverse the district court.

I.

"A 'pooled trust' is a special arrangement with a non-profit organization that serves as trustee to manage assets belonging to many disabled individuals, with investments being pooled, but with separate trust 'accounts' being maintained for each disabled individual." *Lewis v. Alexander*, 685 F.3d 325, 333 (3d Cir. 2012) (quoting Jan P. Myskowski, *Special Needs Trusts in the Era of the Uniform Trust Code*, 46 N.H. Bar J. 16, 16 (2005–2006)). Funds held in the trust subaccounts are excluded from the beneficiary's resources for purposes of Medicaid eligibility, *see* 42 U.S.C. § 1396p(d)(1), (4), and are used to "pay[] for a disabled person's Medicaid-ineligible expenses, such as clothing, phone service, vehicle maintenance, and taxes," *Cox v. Iowa Dep't of Hum. Servs.*, 920 N.W.2d 545, 551 (Iowa 2018) (quoting *Ctr. for Special Needs Tr. Admin., Inc. v. Olson*, 676 F.3d 688, 695 (8th Cir. 2012)). "These trusts are 'intended for individuals with a relatively small amount of money. By pooling these small accounts for investment and management purposes, overhead and expenses are reduced and more money is available to the beneficiary.' " *Id.* at 551 (quoting *Lewis*, 685 F.3d at 333). When the beneficiary dies, Title XIX of the Social Security Act (Title XIX) allows the trustee to retain the remaining balance in the beneficiary's subaccount, but any amounts not retained must be paid to the state to reimburse it for the Medicaid benefits it provided for the individual. 42 U.S.C. § 1396p(d)(4)(C)(iv).

This case involves a pooled special needs trust established for the benefit of Steven Muller. Mr. Muller started receiving medical assistance covered by Medicaid in August 1994. In September 2014, Mr. Muller signed a joinder agreement to establish a subaccount with the National Pooled Trust. The Center, as trustee of the National Pooled Trust, accepted the joinder agreement on September 15, and Mr. Muller transferred $143,564.28 into the pooled special needs trust. Over the next several years, Mr. Muller's pooled trust subaccount was used to pay for massage therapy, a "care manager," investment services, and accounting and trustee fees. The Center provided annual reports to DHS reflecting these expenditures as well as the account's share of investment gains, but did not file any annual reports in district court.

Mr. Muller died on June 30, 2020. Shortly thereafter, DHS contacted the Center asserting that the trust terms, as well as federal and state law, required the remaining balance in Mr. Muller's subaccount to be paid to DHS (over Mr. Muller's lifetime, DHS paid $741,845.65 toward his medical care), less any funds the Center retained "for administrative or other expenses of the trust." DHS sent another letter in September 2020, stating, "Rather than submitting to the jurisdiction of the District Court, we believe your client just kept all of the trust funds after death contrary to the state's interest in the trust without the Court reviewing its actions. I understand your client's legal arguments, but a trustee must seek court approval." The Center then provided its final annual report to DHS, which reflected that Mr. Muller's subaccount had a balance of

$115,890.98, including a gain on investments of $3,039.77 since the previous accounting. The Center retained that remaining balance.

On March 2, 2021, DHS filed a petition to invoke jurisdiction over the irrevocable trust in the Iowa District Court for Scott County. *See* Iowa Code § 633C.4(2) (2021). DHS noted that the Center had never invoked the court's probate jurisdiction concerning Mr. Muller's trust by filing annual reports with the court as required by Iowa Code chapter 633C. Indeed, DHS asserted that the Center "has repeatedly failed to invoke jurisdiction over pooled trust matters in Iowa and currently has two living beneficiaries, and two deceased beneficiaries . . . where jurisdiction was not invoked by the trustee during the lifetime of the beneficiary." DHS's petition asked the court to "order the trustee to provide an accounting of how the funds have been or will be distributed since its last annual report," and order that "any funds after the payment of properly retained funds be paid to DHS from the assets of the trust."

The Center filed its final report with the court on September 2, attaching copies of the annual reports previously provided to DHS as well as the final accounting covering the period between September 1, 2019, and October 1, 2020. The report indicated that the final balance remaining in Mr. Muller's subaccount was $0, "as all assets had been retained by The National Pooled Trust, pursuant to the terms of [the trust]." DHS objected and, by order of the district court for a more specific statement, the Center filed a supplemental final report on October 7. The supplement included an explanation of federal and state law concerning pooled special needs trusts, concluding:

14. The Trustee uses retained funds in furtherance of its nonprofit mission to provide specialized administrative services for persons with disabilities for the purpose of improving their quality of life.

15. The Trustee is unable to provide a further accounting of the funds after the funds were retained by the Pooled Trust pursuant to 42 U.S.C. § 1396p(d)(4)(C)(iv) because the funds were retained in a master account and are no longer segregated in an individual sub-account.

. . . .

22. The Trustee does **not** use the retained funds for any prohibited expenses cited in the [Social Security Administration's Program Operations Manual System (POMS)], and specifically the retained funds are **not** distributed to family members of the beneficiary, nor are they used to pay inheritance taxes, debts to third parties, or funeral expenses after death. See POMS SI 01120.203(E)(2).

. . . .

30. The description "Trust Retention" for final disposition of the trust assets is consistent with the Trustee's standard practice and consistent with the applicable code and regulations for pooled special needs trusts. The funds are retained and used in furtherance of the Trustee's nonprofit mission to provide for disabled individuals and to improve the quality of life of those individuals.

The parties filed cross-motions for summary judgment. The Center submitted a verified statement from Michelle Diebert, its president, stating she had verified that the remaining funds from Mr. Muller's subaccount were "retained in the trust's master client account," which "is used to administer the pooled trust at issue in this matter, and all funds from such account are used for the benefit of the beneficiaries of the pooled trust." She also verified that the retained funds from Mr. Muller's subaccount "were never transferred into an operating account used for the benefit of the trustee." The Center took the position that once it had retained the funds to be used for permissible purposes,

DHS no longer had an interest in the funds and it owed DHS no further reporting obligations. DHS took the position that the Center was required to specifically account for how it had or would use the retained funds and remit to DHS any funds not used for identified administrative expenses or medical care for other beneficiaries of the pooled trust.

The district court initially denied both parties' motions for summary judgment, concluding DHS was entitled to a more detailed accounting of what the Center did with the remaining funds, but DHS had not "affirmatively establish[ed] the trust squandered the assets in the trust" to entitle it to summary judgment. The Center filed a motion to reconsider based on the *Hewitt* district court's intervening ruling, which involved the same parties (and attorneys) but a different pooled special needs trust. The *Hewitt* district court granted summary judgment to the Center, concluding the Center provided all the accounting DHS was entitled to by certifying that it had retained the remaining funds in its master account for the benefit of other beneficiaries of the pooled trust. *See Hewitt*, ___ N.W.2d at ___.

A different district court judge took up the motion to reconsider, disagreeing with the district court in *Hewitt*. Unlike the *Hewitt* court, this court concluded the trust's retention of the funds was "not a valid expenditure of trust funds," the trustee's promise to act in accordance with the terms of the trust did not satisfy the trustee's fiduciary duties owed to DHS as a beneficiary under Iowa trust law, and the trustee in fact violated its fiduciary duties by comingling the trust's funds in the master account. The district court concluded:

[T]he Center has not retained any funds in the trust, it depleted the trust completely in order to inject the funds into another master account. As this use of trust funds is improper, the Court finds that there are no funds properly retained by the trust, and the $115,890.98 which was wrongfully expended from the trust as "retention" expenses must be paid out to DHS, who has expended well over that amount in medical assistance on behalf of Muller.

The Center appealed, and we retained the appeal, together with DHS's appeal in *Hewitt, id.* at ___, which we also decide today.

## II.

We review summary judgment rulings for correction of errors at law. *Kirlin v. Monaster,* 984 N.W.2d 412, 415 (Iowa 2023). "Summary judgment is proper if the only issue is the legal consequences flowing from undisputed facts." *Id.* (quoting *Johnson v. Associated Milk Producers, Inc.*, 886 N.W.2d 384, 389 (Iowa 2016)). Because the only issues here involve the interpretation of statutory and trust provisions, summary judgment was "the proper vehicle to test the validity of [the] claim[s] . . . [and] we need only decide whether the district court properly applied the law." *Id.* (first and third alterations and omission in original) (quoting *Hill v. State, Dep't of Hum. Servs.*, 493 N.W.2d 803, 804–05 (Iowa 1992)).

This appeal is controlled by our analysis in the *Hewitt* companion case. ___ N.W.2d ___. For a more thorough discussion of the interplay between the trust provisions of Title XIX in 42 U.S.C. § 1396p(d)(4) and chapters 633A and 633C of the Iowa Trust Code, we direct the parties to that opinion. *See Hewitt*, ___ N.W.2d at ___. The district court here took a different route to reach a different conclusion, and we focus our discussion on the distinct issues raised by that decision.

When it enacted subsection 1396p(d) as part of the Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103–66, § 13611(b), 107 Stat. 312, 624–26, Congress set out rules that certain types of trusts would have to follow to keep assets in the trust from counting toward resources that would negatively impact the beneficiary's ability to qualify for Medicaid. *See Lewis*, 685 F.3d at 333 (discussing background of section 1396p). But Congress did not interfere with the trustee's fiduciary obligations related to administration of the trust. Those it left to state trust codes. *Id.* at 350.

There is no dispute that DHS is a beneficiary of the pooled special needs trust established for Mr. Muller and administered within the separate subaccount maintained for his benefit by the Center. *See* Iowa Code § 633C.4(2). As the district court properly recognized, DHS's interest in Mr. Muller's trust subaccount is a contingent future interest. Specifically, DHS has an interest, in the words of Title XIX, only "[t]o the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust." 42 U.S.C. § 1396p(d)(4)(C)(iv); *see also* Iowa Admin. Code r. 441—75.24(3)(*c*)(4) (providing for same limitation).

Here, it is important to identify how and when DHS's interest in Mr. Muller's subaccount is extinguished to determine the extent of the accounting to which it is entitled. We do so by summarizing our analysis in *Hewitt*. As a contingent beneficiary, DHS's interest ends when the contingency on which its interest depends can no longer happen (i.e., is defeated). *See Hewitt*, ___ N.W.2d at ___. Under the unambiguous language of section 1396p, DHS's

contingent interest in a beneficiary's subaccount is defeated when the trust "retains" the funds. *Id.* at ___; *see also* 42 U.S.C. § 1396p(d)(4)(C)(iv) (creating a contingent interest to the extent funds "are not retained by the trust"). And a trust can retain funds remaining in a trust beneficiary's subaccount when he or she dies. *Hewitt,* ___ N.W.2d at ___; *see also* 42 U.S.C. § 1396p(d)(4)(C)(iv).

An individual's pooled special needs trust subaccount terminates at the time of his or her death, and the decision to retain the funds remaining in that subaccount is part of the winding up process for that individual trust. *See* Iowa Code § 633A.2201(1)(*b*) ("[A] trust terminates when . . . [t]he trust purpose is fulfilled."), (2) ("On termination of a trust, the trustee may exercise the powers necessary to wind up the affairs of the trust and distribute the trust property to those entitled to the trust property."). For a pooled special needs trust, distribution of the trust property as part of the winding up process includes first deciding whether to retain the remaining subaccount balance, in whole or in part, and then remitting any balance not retained first to DHS to reimburse its Medicaid expenditures and, if any funds remain after that, then to any residual beneficiaries. 42 U.S.C. § 1396p(d)(4)(C)(iv); *Hewitt,* ___ N.W.2d at ___; *see also Reese,* 881 F.3d at 1026 ("The trust agreement can direct who should receive any assets that might remain after reimbursement."). Here, DHS's contingent interest in Mr. Muller's subaccount ended when the Center retained the funds remaining in his subaccount. *See Hewitt,* ___ N.W.2d at ___.

That does not mean the Center no longer owed DHS any fiduciary duties when the trust terminated at Mr. Muller's death. It still owed it a duty of

accounting. The extent of that accounting, and any attendant consequences for failing to provide it, determines the outcome of this case. Under the relevant code provisions defining a trustee's fiduciary duties, the Center is required to provide an annual accounting to trust beneficiaries, Iowa Code § 633A.4213(3), including DHS, *see id.* § 633C.4. The content of the required accounting is largely "within the discretion of the trustee, as long as [it is] sufficient to reasonably inform the beneficiary of the condition and activities of the trust during the accounting period." *Id.* § 633A.4213(6).

The district court did not focus on the reporting requirements other than to reject the Center's "promise" to properly use the funds it retained. Instead, apparently believing that the Center was required to retain the funds in Mr. Muller's separate subaccount, it concluded that the Center "wrongfully expended" the $115,890.98 remaining balance "from the trust as 'retention' expenses" "by comingling the trust's funds with a master account." Thus characterized as an expenditure, the court reasoned that the Center did not actually "retain[] any funds in the trust," but instead "depleted the trust completely in order to inject the funds into another master account," which the court held violated the requirement to pay the state for reimbursement of its Medicaid expenditures since the Center could not provide an exact accounting of how it used the retained funds. Having found a violation of the accounting statute, the court ordered the Center to pay the full amount of residual funds to DHS.

The district court's analysis got off track in two respects. First, it misconstrued the trustee's obligations at the time an individual beneficiary dies when it concluded that the Center was required to maintain Mr. Muller's individual subaccount and that the Center depleted the trust when it closed his subaccount. While the trustee is required to maintain a separate account for each individual beneficiary of the trust to be used solely for that individual's benefit, that is true only during the beneficiary's lifetime. As we explained above (and more fully in *Hewitt*), when the beneficiary dies, the individual trust subaccount terminates, *see* Iowa Code § 633A.2201(1)(*b*) ("[A] trust terminates when . . . [t]he trust purpose is fulfilled."), and the trustee winds up that beneficiary's individual trust, ultimately by "distribut[ing] the trust property to those entitled to [it]," *id.* § 633A.2201(2). *See Hewitt*, ___ N.W.2d at ___. When the Center informed DHS that it could not account for the funds because they were no longer segregated from the master account, it was conveying the fact that it was no longer required to maintain a separate subaccount after Mr. Muller died. There would be no purpose for continuing the subaccount, which could only be used for Mr. Muller's benefit. *See* 42 U.S.C. § 1396p(d)(4)(C)(iii). Indeed, both the master National Pooled Trust governing document and the individual joinder agreement contemplated distributing the funds in the subaccount at Mr. Muller's death. The district court's conclusion that the Center did not retain any of the funds in the subaccount but "depleted the trust" misconstrues trust law. Once the trust terminated at Mr. Muller's death, the trustee was obligated to distribute the remaining funds from the subaccount consistent with state and

federal law and pursuant to the terms of the trust, and in doing so was permitted to retain the funds.

Second, the district court seems to have misunderstood the mechanics of how the subaccounts work. The trust is required to maintain separate accounts for each beneficiary's use, but it is allowed to pool the funds for investment and management purposes. *Id.* § 1396p(d)(4)(C)(ii). As the Social Security Administration explains in its *Program Operations Manual System* by way of analogy, "the pooled trust is like a bank that holds the assets of individual account holders. . . . The pooled trust instruments usually consist of an overarching 'master trust' and a joinder agreement that contains provisions specific to the individual beneficiary." Soc. Sec. Admin., *Program Operations Manual System (POMS)* SI 01120.203D(1) [hereinafter POMS], https://secure.ssa.gov/poms.nsf/lnx/0501120203 [https://perma.cc/87BZ-YZ97]. The actual funds, which are fungible, are pooled into a master account where they can be invested as a unit. Individual subaccounts are maintained for each beneficiary as an accounting function, not as an actual depository of funds. In other words, the master account always holds all of the funds, and those funds are allocated among the various individuals' subaccounts based on their own funding infusions and expenditures, but the funds are never physically segregated. So when the trustee makes the decision to retain funds remaining in an individual beneficiary's subaccount when he or she dies, the funds are not "comingled" with the master account. Nor are they "inject[ed] . . . into another master account." They are already in the master account, of which Mr. Muller's

subaccount was always a part.[2] But there is no longer a separate accounting for that individual subaccount, which ceases to exist, leaving the retained funds in the master account but not tied to any individual subaccount. They are in effect unallocated funds within the master account. That the Center chose to retain the funds in its master account, which it verified is used only for the benefit of other beneficiaries of the trust, was a permissible distribution as part of the winding up process, not an "expenditure" out of the trust account.

This brings us back to the underlying issue raised by this proceeding—whether the Center satisfied its reporting and accounting obligations. As DHS noted in its petition, the Center failed to file annual reports for any of the subaccounts held by Iowa beneficiaries until DHS brought the Muller and Hewitt trusts to its attention. Mr. Muller's trust began in 2014, and the Center should have been filing annual reports each year since. DHS admitted it received annual accountings from the Center for Mr. Muller, but the Center apparently failed to file those reports with the district court as required by Iowa Code section 633C.4(2). The Center did, however, rectify its filing deficiencies through this proceeding. No specific remedy is provided for a trustee's failure to file annual reports as required by section 633C.4(2), but we admonish the Center to comply with its filing obligations.

With respect to the adequacy of the accountings provided in the final report for Mr. Muller's trust, we conclude, as we did in *Hewitt*, that the Center's

---

[2]The Center has identified only a single master account, of which Mr. Muller's subaccount was a part. We find nothing in the record to support the conclusion that Mr. Muller's funds were "inject[ed] . . . into *another* master account." (Emphasis added.)

final report adequately apprised DHS that the Center had retained the remaining balance for proper purposes as allowed by the trust documents and the relevant statutory provisions.

Even if the Center's final report had not met its reporting obligations, the district court's chosen remedy is not one available to DHS in this particular action. DHS brought an action for an accounting because it alleged the Center was in violation of its fiduciary duties to inform and account under section 633A.4213. But as the trust code makes clear, even if a trustee violates these duties, the only things a court can do are: "(1) [o]rder the trustee to comply with the trustee's duties under this section," and "(2) [a]ssess costs, including attorney fees, against the trustee personally." *Id.* § 633A.4213(5)(*a*). Other than that, "the only consequence to a trustee's failure to provide the required accounting" is that it cannot rely on the one-year statute of limitations in defending against a breach of trust claim. *Id.* § 633A.4213(5)(*b*); *see also id.* §§ 633A.4502(1) (authorizing a beneficiary to bring a claim seeking specific types of equitable relief to remedy a breach of trust "[e]xcept as provided in section 633A.4213"), .4504(1) (providing a one-year statute of limitations for a breach of trust claim by a beneficiary who has received an accounting pursuant to section 633A.4213).

The district court essentially granted DHS the relief it could have sought had it brought an equitable claim for a nonreporting-related breach of trust, assuming DHS could substantiate a breach of trust claim. *See id.* § 633A.4502(1) ("Except as provided in section 633A.4213, to remedy a breach of trust which

has occurred or may occur, a beneficiary or cotrustee of the trust may request the court to do any of the following . . . .". Had it brought such a claim, DHS could have requested the court to, among other things, "nullify an act of the trustee, impose an equitable lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds." *Id.* § 633A.4502(1)(*g*). But DHS did not bring a breach of trust claim. It brought a claim seeking an accounting, expressly relying on section 633A.4213. The district court therefore lacked authority to grant the relief it provided to remedy the Center's alleged failure to account for the retained funds. To the extent DHS was concerned about relying only on the Center's promises to ensure that it would use the funds for only proper or allowed purposes (and there is nothing in this record to suggest it will not), DHS could have filed a breach of trust claim (assuming it could meet the pleading requirements) to pursue the relief it seeks here.[3]

DHS has received the accounting to which it was entitled under Iowa Code section 633A.4213. The district court therefore erred in granting DHS's motion for summary judgment and denying the Center's cross-motion for summary judgment.

---

[3]A pooled special needs trust must be administered by a nonprofit organization, which has its own reporting obligations. *See* Peter Swords, *The Form 990 as an Accountability Tool for 501(c)(3) Nonprofits*, 51 Tax Law. 571, 571 (1998) (concluding "that the 990 can be quite useful for addressing abuses such as self-dealing").

III.

For the foregoing reasons, the district court should have granted summary judgment in favor of the Center. The district court's summary judgment order is reversed and remanded for entry of judgment for the Center.

**REVERSED AND REMANDED.**